Cecil BRADLEY, Appellant,

v.

Rosalynda CASTRO et vir., Appellees.

No. 18140.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 25, 1979.

Hogan, Fudge & Elder, W. Bernard Fudge and Billy T. Elder, Burkburnett, for appellant.

Smith & Douglass, Gene Douglass, Wichita Falls, for appellees.

OPINION

SPURLOCK, Justice.

The owner of an automobile repair garage has appealed a judgment rendered

against him for damages allegedly caused by his negligence in undertaking repairs without first ascertaining what was wrong with the vehicle, and after minor repairs, advising the appellees that the problems had been corrected and that the car was ready for use when in fact it was not, resulting in the motor burning up. The garage owner complains that there is no evidence that his negligence is a proximate cause of the damages and that there is no evidence that the damages found by the court are the reasonable cost of repairs necessarily incurred.

We reverse and remand.

Cecil Bradley is the owner of B & C Garage and is in the business of repairing automobiles. Rosalynda and husband, John Castro, are the owners of a 1973 Ford automobile. They were having trouble with the automobile; it would lose power, die, and overheat. Mrs. Castro took it to B & C to have it repaired. She spoke with Buster Pruett, a B & C employee, when she left it. Bradley made the repairs.

Trial was to the court. The trial court made the following pertinent findings of fact:

"1. Prior to January 13, 1978, Plaintiff, Rosalinda (sic) Castro, delivered her 1973 Ford Station Wagon to Defendant Cecil Bradley for repairs. At the time of delivery the vehicle was inspected by Cecil Bradley's employee, Buster Pruett.

"2. At the time of such delivery the automobile was smoking and steaming from the engine area of the car as well as in the exhaust area.

" . . .

"6. Rosalinda (sic) Castro, at the time of delivery, had told the agent and employee of Cecil Bradley that while driving the automobile it had overheated and that steam came out from underneath the engine and she described the difficulties in full and complete detail.

"7. Prior to Cecil Bradley undertaking repairs on the automobile he did not talk to his employee, Buster Pruett. Cecil Bradley did not talk to the Plaintiff. Cecil Bradley made no inquiry as to what was wrong with the car.

" . . .

"9. The vehicle was returned to Rosalinda (sic) Castro on or about January 13, 1978 and it was represented to her by the employee of Cecil Bradley, Buster Pruett, on such occasion that the vehicle had been repaired and that it was in good working order and that all of the problems in question had been corrected.

"10. Rosalinda (sic) Castro drove the vehicle from the business place of the Defendant and within a matter of minutes the engine again overheated, seized up, and became completely burned up due to the overheated condition.

" . . .

"12. Based upon such repair estimate of Wolfe Ford Company and the admissions of the Defendant, Cecil Bradley, as incorporated in his deposition and read into evidence herein, the sum of $547.00 was a reasonable and necessary cost to effect such repairs in Wichita County.

"13. The Plaintiffs paid $547.00 to Insurance Wrecking Company of Wichita County, Texas in order to have a used engine placed in the vehicle as the engine which was in the vehicle was burned up and could not be repaired for such cost."

B & C complains that the trial court erred in rendering judgment for Mrs. Castro because there is no evidence supporting the findings that $547.00 was a reasonable and necessary cost to effect repairs or that the $547.00 paid by Mrs. Castro was reasonable and necessary. It is well settled that the appellees, having elected the cost of repair measure of damages, must show rea-

sonableness of the cost of repairs necessary to restore the automobile to its former condition as measured in the vicinity in which the occurrence took place. 17 Tex.Jur.2d *Damages* § 87 at 160 (1960). The record reflects that after her engine burned up Mrs. Castro took her car to Wolfe Ford Company in Wichita County and paid for a repair estimate. Wolfe estimated that it would cost over $1,000.00 to repair the auto.

Mrs. Castro decided to put a rebuilt engine in her auto at a cost of $547.00. The record reflects that portion of the deposition testimony of Bradley concerning the necessity of some of the repair called for in the Wolfe estimate. He stated that in his opinion some of the items were not necessary. However, there is no evidence in the record concerning the reasonableness of the cost of the repairs estimated or the cost of the repairs necessary in the opinion of Bradley. Further, there is no evidence in the record of the reasonableness of the cost of installing a rebuilt engine in a car in that vicinity.

■ Mrs. Castro would have us infer that the cost of the rebuilt engine is reasonable. She notes that the cost of the engine is lower than the repair estimate she got from Wolfe Ford. We decide no such inference can properly be made. Mere proof of amounts charged or paid does not raise an issue of reasonableness and such amounts ordinarily cannot be recovered without evidence showing that the charges are reasonable. *Hyatt v. Tate*, 505 S.W.2d 373 (Tex. Civ.App.—Houston [1st Dist.] 1974, no writ). Further, we distinguish the cost of repair of the existing engine from the cost of replacement with another used engine for the purpose of establishing reasonableness of cost of repair. We sustain Bradley's point of error that there is no evidence of reasonableness of cost of repair.

■ Mrs. Castro argues that should we reverse the trial court's judgment, we should reverse and remand only the issue of damages. We do not agree. Tex.R.Civ.P. 434 provides that where liability issues are contested a separate trial on unliquidated damages alone shall not be ordered. We

conclude that because the damages in this case are the reasonable cost of repairs, the damages are unliquidated. Thus should remand be appropriate the entire case will have to be retried.

■ Bradley claims he is entitled to a reversal and rendition of judgment and that Mrs. Castro take nothing. He contends that there is no evidence to support the finding that Mrs. Castro told Pruett that her car was steaming and smoking. He also claims that there is no evidence that his negligence was a proximate cause of the damage to the car. Mrs. Castro testified on direct examination as follows:

"Q Did anybody, any employees, or owners, or anything (sic) of the garage come out to talk to you and ask you what you wanted?

"A Yeah, I honked the horn and he came out.

" . . .

"Q All right. Did he appear to you to be working there in the garage?

"A Yes, he was wiping his hands with a rag.

" . . .

"Q Did he ask you what you wanted done?

"A He asked me what was the matter.

"Q All right.

"A And I told him my car wasn't acting right, or very good.

"Q Well, tell the Judge as much as you can remember about what you told that man was wrong with your car?

"A I told him it was stopping. It kept stopping, dying, I guess, I didn't call it—Yeah, I told him the car had died, or kept dying on me all the way down there and it was steaming.

"Q Okay. You told him it was steaming?

"A No. He could see it.

We conclude that from the above there is evidence that Mrs. Castro told the employee about the steam. The trial judge as the

trier of fact did not have to believe Mrs. Castro when she attempted to retract her statement that she informed the employee of the steam.

After a thorough review of the entire record we also conclude that there was evidence from which the trial court could have properly inferred that Bradley's negligence was a proximate cause of the damages sustained by Mrs. Castro. We overrule Bradley's points of error that there is no evidence of Mrs. Castro informing the employee of the steam and no evidence of proximate cause.

Having decided that there is no evidence of the reasonableness of damages, we reverse the judgment of the trial court. We remand the case to the trial court for a new trial.