Cecil JOHNSON et ux. et al., Appellants,

v.

Harold M. WILLIS, Appellee.

No. 6118.

Court of Civil Appeals of Texas, Waco.

Feb. 28, 1980.
Rehearing Denied March 27, 1980.

Tim B. Rhatican, Ken R. Davey, Ken R. Davey, P. C., Dallas, Wallace T. Keller and

Edward G. Markey, Law Offices of Meier & Keller, Euless, for appellants.

Harry L. Dulick, James E. Ferguson, Ferguson & Dulick, Inc., Cleburne, for appellee.

## OPINION

JAMES, Justice.

This is a suit brought by Plaintiff-Appellee, Harold M. Willis, against Defendant-Appellants, Cecil Johnson and wife, Evelyn Johnson, Glen D. Worley, J. W. Maberry, and Guardian Title Company of Johnson County, Inc. for recovery of monetary damages sustained in a real estate transaction as a result of alleged violations of the Texas Deceptive Trade Practices Act.

In 1975, Appellants Johnson owned approximately 82 acres of land in Johnson County, Texas, which they desired to subdivide into smaller ten-acre tracts and sell for approximately $10,000 per tract through the Veterans Land Board. Appellant Maberry was retained to prepare preliminary surveys of the subdivided tracts and Appellant Worley contracted to act as real estate agent for the Johnsons in selling these tracts. On or about March 24, 1975, Appellee Willis contracted with the Johnsons to purchase one of the ten-acre tracts for $10,000 provided that the transaction could be made through the Veterans Land Board.

The survey prepared by Appellant Maberry divided the Johnson land into eight ten-acre tracts and also showed a small 2.2-acre tract which remained after the subdivision. The 2.2-acre tract was located adjacent to the west end of the tract contracted for by Mr. Willis and was offered by Appellant Worley to Willis for sale for an additional $1,000. On May 22, 1975, Willis executed a new contract to purchase 12.2 acres from the Johnsons at a total purchase price of $11,000. This contract was made on an "Application and Contract of Sale" form provided by the Texas Veterans Land Board.

Pursuant to the Board's directive, the "Application and Contract of Sale" was delivered to Appellant Guardian Title for a

title policy commitment. Guardian issued a title binder to the Veterans Land Board on August 8, 1975. The title binder approved title in the Johnsons, with the following exceptions from the policy coverage: (1) all liens recognized or created in the deed to the assured, (2) all restrictive covenants affecting the property (none of record), (3) taxes and assessments for the year 1975 and subsequent years, (4) rights of parties in possession, (5) save and except any portion of property lying in private or public roadway, (6) oil and gas lease dated September 6, 1973, executed by Bobby E. King and wife, Patricia J. King to Chalfant, Magee and Hansen, Inc., transferred to HNG Oil Company September 24, 1973, (7) easement to Johnson County Water Supply Corporation, and (8) visible and apparent easements on or across the property, the existence of which do not appear of record. Sometime after the issuance of the title binder, Guardian discovered the existence of a reservation of a cemetery and a roadway to the cemetery in a deed in Johnson's chain of title. The cemetery reservation affected the title in only 42.3 acres of the 82 acres that had been subdivided, but Guardian did not know initially which of the ten-acre tracts would be affected because the survey prepared by Maberry did not show the location of the cemetery. The "Application and Contract of Sale" executed by the Johnsons and Willis in May made no mention of this cemetery reservation; however, Appellant Worley informed Guardian Title that the cemetery was located on the Willis tract. Thereafter, Guardian contacted the Veterans Land Board to disclose this additional reservation and the Land Board approved the addition of the reservation to the title policy and to the Contract for Sale and Purchase to be executed at closing by Mr. Willis.

The Willis sale was closed on November 4, 1975 in the offices of Guardian Title. Since the cemetery reservation had been discovered prior to the closing and since the Veterans Land Board had allowed the addition of an exception for the reservation in the title policy, all papers executed by Willis at the closing included the reservation for the cemetery. At the closing, Mr. Willis signed the Contract of Sale and Purchase, whereby he agreed to purchase from the Veterans Land Board 12.2 acres "save and except portion reserved for cemetery, recorded in Vol. 419, page 285, Deed Records, Johnson County, Texas." Since the "Application and Contract of Sale" signed by Willis in May of 1975 had not included the cemetery reservation, the Veterans Land Board further required that Willis sign an affidavit acknowledging his willingness to accept the said reservation. This affidavit also stated that Willis was purchasing 12.2 acres "save and except portion reserved for cemetery, recorded in Vol. 419, page 285, DR JCT." Also on November 4, 1975, Appellants Johnson signed a Warranty Deed conveying the 12.2 acres to the Veterans Land Board "save and except portion reserved for cemetery, recorded in Vol. 419, page 285, Deed Records, Johnson County, Texas." On or about November 6, 1975, a title insurance policy was issued to the Veterans Land Board which also excepted from coverage the portion reserved for the cemetery. On or about November 7, Mr. Maberry, at the request of Guardian Title, prepared a corrected survey which showed that the cemetery was located on the Willis tract and further that the said cemetery was located on the additional 2.2 acres that Willis had contracted for in May of 1975.

Appellee Willis filed this suit in November of 1976, alleging that Defendant-Appellants jointly and severally violated two provisions of Art. 17.46(b), to wit, subsections (5) and (12) thereof, Tex. Business and Commerce Code (Texas Deceptive Trade Practices Act): (1) they represented "that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have . . ."; and (2) they represented "that an agreement confers or involves rights, remedies, or obligations which it does not have . . ." The testimony at the trial revealed that the Willis' primary contention was that Defendant-Appellants had failed to tell him that the land devoted to the cemetery was included in the computation of the 12.2 acres

that he had purchased, i. e. Mr. Willis understood the sale to be one of 12.2 net acres over and above the land reserved for the cemetery. The testimony showed that the cemetery, though small and unkempt, was clearly visible from several vantage points on the Johnson land. Willis testified that he had seen the cemetery on the land and thus knew of its existence. However, the testimony also showed that the cemetery was not reserved in the Contract for Sale that was made with the Johnsons and negotiated by Worley. Further the cemetery was not shown on the original survey prepared by Maberry. Although the cemetery reservation was included in the papers executed at the closing in the offices of Guardian, Willis testified that he could not remember that Guardian told him about the addition of the cemetery reservation.

The case was submitted to the jury on thirty-four (34) special issues, in response to which the jury found:

(1) that each of the Defendants had "represented that the property sold Harold M. Willis had characteristics, uses, benefits, or quantities which it did not have";

(2) that such representations "adversely affected Harold M. Willis";

(3) that each of the Defendants had "represented that the contract under which Harold M. Willis purchased the property in question involved rights or obligations which it did not have";

(4) that such representations "adversely affected Harold M. Willis";

(5) that each of the Defendants' actions or courses of action "was unconscionable toward Harold M. Willis";

(6) that such "unconscionable action or course of action adversely affected Harold M. Willis";

(7) that Defendant Worley was acting as agent for the Defendants Mr. and Mrs. Johnson in all his dealings with Plaintiff Willis;

(8) that the sum of $4,000 from Defendants Guardian and Johnson would "reasonably compensate Harold M. Willis for his actual damages resulting from    .    .    .

misrepresentations or unconscionable actions, if any";

(9) that the sum of $1,000 from Defendants Maberry and Worley would "reasonably compensate Harold M. Willis for his actual damages resulting from    .    .    . misrepresentations or unconscionable actions, if any";

(10) that reasonable attorney's fees were $4000 for preparation and trial of the case; $750 for appeal to the Court of Civil Appeals, $350 for Application for Writ of Error to the Supreme Court, and $1500 if the Writ of Error was granted by the Supreme Court.

The jury failed to find:

(1) that Harold M. Willis "had actual knowledge that he was purchasing 12.2 acres, save and except that portion reserved for the cemetery";

(2) that Harold M. Willis "had actual knowledge that he was purchasing the 12.2 acres in question subject to visible and apparent easements on, or across, the property";

(3) that Harold M. Willis "had actual knowledge that he was purchasing the 12.2 acres save and except any portion lying in the public or private roadway";

(4) that the "defendants acted in good faith and followed all reasonable procedures to prevent errors with respect to the representations, if any, found."

On this verdict the trial court entered judgment against Worley, Maberry, the Johnsons, and Guardian Title, jointly and severally, for $3000.00 with interest, and in addition thereto against the Johnsons and Guardian Title, jointly and severally, for $9,000.00 with interest, and against all Defendants, jointly and severally, for attorney's fees and costs, from which judgment all Defendants have appealed.

Appellant Guardian Title appeals on 45 points of error, the first of which complains of the trial court's overruling special exceptions to Appellee's pleadings. Appellants Johnson, Maberry, and Worley have filed a joint appeal assigning nine points or error,

one of which also complains of error in overruling their special exceptions to Appellee's pleadings. Since these points are essentially directed at the same defect, we will discuss them together.

■ Both special exceptions referenced in the assignments of error complained that the pleadings of the Appellee were vague, general, indefinite and failed to allege specific acts that form the basis of the claim under the Texas Deceptive Trade Practices Act. The exceptions basically pointed out that the transaction complained of was one involving the sale of real estate, that the Deceptive Trade Practices Act did not provide a remedy for "consumers" purchasing "real estate" until the Act was amended effective September 1, 1975, that some of the transactions involved in this sale occurred prior to September 1, 1975, and that the petition was so indefinite that Appellants could not determine which acts complained of were allegedly violative of the Texas Deceptive Trade Practices Act. We *sustain these contentions.*

Our Supreme Court has said that "the date of the *acts* which give rise to the cause of action under the Consumer Protection Act, rather than the date of the *sale*, determines the applicability of the Act" (emphasis ours). *Woods v. Littleton,* 554 S.W.2d 662, 666 (Tex.1977). The pleadings in this case alleged generally that the Defendants had violated Subsections (5) and (12) of Sec. 17.46(b), Tex.Bus.Comm.Code and also Sec. 27.01, Tex.Bus.Comm.Code. The pleadings further related a series of events beginning in March of 1975 and ending in November of 1975. The pleadings did not in any way designate or state with particularity which acts or events were relied upon as a basis for liability under the Texas Deceptive Trade Practices Act.

■ A pleading must give fair and adequate notice of the facts upon which the pleader relies in order that the adverse party may properly prepare his defense thereto. *McCamey v. Kinnear,* 484 S.W.2d 150 (Tex.Civ.App.1972). The special exception is properly used to demand particularity in pleadings if pleadings do not properly apprise a party of his opponent's contentions. McDonald, Texas Civil Practice, Sec. 5.06.1 and cases cited therein. In this case the pleadings were not definite enough to provide notice of the Plaintiff's contentions under the Texas Deceptive Trade Practices Act and the special exceptions were improperly overruled.

Appellant Guardian's Points Nos. 16 through 25 complain that the special issues on which liability is predicated were improperly submitted to the jury. Appellants Johnson, Maberry and Worley have also assigned such improper submissions as error. Again because of the similarity of all these points of error, they will be discussed and treated together.

Liability in this case was based on three "sets" of issues submitted separately as to each of the Defendant-Appellants:

(1) "Do you find from a preponderance of the evidence that the Defendant, _____, represented that the property sold Harold M. Willis had characteristics, uses, benefits, or quantities which it did not have?

"Answer 'Yes' or 'No'

"ANSWER (To each of these issues the jury answered 'YES')

(2) "Do you find from a preponderance of the evidence that the representation or representations inquired about in Special Issue No. ____ (referring to preceding issue) adversely affected Harold M. Willis?

"Answer 'Yes' or 'No'

"ANSWER (To each of these issues the jury answered 'YES')

(3) "Do you find from a preponderance of the evidence that Defendant, _____, represented that the contract under which Willis purchased the property in question involved rights, or obligations which it did not have?

"Answer 'Yes' or 'No'

"ANSWER (To each of these issues the jury answered 'YES')

(4) "Do you find from a preponderance of the evidence that the representation or representations inquired about in Special Issue

No. ___ (referring to preceding issue) adversely affected Harold M. Willis?

"Answer 'Yes' or 'No'

"ANSWER (To each of these issues the jury answered 'YES')

(5) "Do you find from a preponderance of the evidence that Defendant's _____ action or course of action, if any, was unconscionable towards Harold M. Willis?

"Answer 'Yes' or 'No'

"ANSWER (To each of these issues the jury answered 'YES')

(6) "Do you find from a preponderance of the evidence that the Defendant's _____ unconscionable action or course of action adversely affected Harold M. Willis?

"Answer 'Yes' or 'No'

"ANSWER (To each of these issues the jury answered 'YES')"

These issues were accompanied by the following instructions:

"You are instructed the term 'REPRESENTATION', as used in this charge means any statement, expressed or implied, or any conduct capable of being turned into a statement of fact.

"You are further instructed that a 'REPRESENTATION' arises when one by acts, admissions, or silence when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts to exist and such other rightfully relies and acts on such belief.

" 'NEGLIGENCE' means, failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

". . . you are instructed that an unconscionable act or course of action means an act or practice which, to a person's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received and the consideration paid, in a transaction involving the transfer of consideration."

■ Guardian objected to these special issues submitted to the jury as (1) failing to inquire as to an ultimate fact issue but rather requesting a legal conclusion from the jury, and (2) failing to inquire as to a specific representation attributable to Guardian, but rather allowing the jury to speculate as to representations made but upon which Plaintiff did not rely and which did not induce Plaintiff to consummate the land purchase. Appellants Johnson, Maberry, and Worley objected to these issues as being overly broad and not confined to the pleadings and the evidence, "in that, as given, the charge allowed the jury to consider acts, events or transactions both before and after the 1975 amendment in answering liability issues." We hold that the trial court erred in overruling these objections to these issues.

In the trial of this case, the plaintiff's cause of action was *totally* dependent on alleged violations of the Texas Deceptive Trade Practices Act. (The Plaintiff alleged a cause of action under Sec. 27.01, Tex.Bus. Comm.Code, but expressly waived this cause of action in the trial.) In fact, the cause of action relied upon was *created* by amendment to the Act effective September 1, 1975, which extended the liability to consumers for deceptive trade practices occurring in transactions involving real estate. Only acts occurring after the effective date of the amendment would give rise to a cause of action in this case. However, the pleadings (as discussed above) and the evidence included events occurring both before and after September 1, 1975. As explained above, the special exceptions to the pleadings were overruled so the pleadings were not confined to acts occurring after September 1, 1975. The testimony revolved around events beginning in March of 1975 and ending in November of 1975 when the transaction was finally closed. The special issues as submitted to the jury in no way limited the jury's consideration to specific acts which might or might not be actionable under the law. Thus, it is impossible to determine whether the jury's findings are

based upon acts which were culpable under the law or upon acts for which no private remedy existed.

Although Rule 277, Tex.Rules Civ.Pro., as amended in 1973, gives the trial court discretion to submit issues broadly, this discretion is not boundless. See, e. g., *Scott v. Atchison, T. &. S.F. R. Co.,* 572 S.W.2d 273 (Tex.1978). We hold that in this case the broad submission was erroneous and requires that the case be reversed and remanded for new trial. We further note that neither the special issues nor the instructions and definitions given the jury by the trial court in any way limited the jury's consideration to any specific acts which might constitute violations of the Texas Deceptive Trade Practices Act. On retrial, the special issues, following the language of proper pleadings, should be framed so as to inquire about specific acts or conduct which are asserted to be violative of said Act. For a complete discussion of the proper submission of liability issues under the Texas Deceptive Trade Practices Act on retrial, we would refer to the opinion in the case of *American Transfer and Storage v. Brown,* 584 S.W.2d 284 (Tex.Civ.App.1979), writ granted.

Since the liability issues were improperly submitted and the case must be remanded for new trial, we do not need to decide the other points of error raised by Appellants. However, Appellants have challenged the submission of the damage issues in this case, and, in the interest of facilitating the trial on remand, we will address this point only insofar at it bears on the issues to be submitted on another trial.

The court in this case submitted only one type of damage issue, but the issue was propounded separately for each Defendant, to wit: "What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate Harold M. Willis for his actual damages resulting from Defendant's _____ misrepresentations or unconscionable actions, if any?" In response to this issue, the jury found "actual damages" attributable to Guardian Title in the amount of $4000, attributable to J. W.

Maberry $1000, to Cecil and Evelyn Johnson $4000, and to Glen Worley $1000. Appellants have complained that these issues provide no proper measure of damages for the jury. We agree.

Damages must be measured by a legal standard which serves to guide the fact finder in determining the amount of compensation required. The proper measure of damages is a question of law for the court but the charge should limit the jury's consideration to facts that are properly a part of the damages allowable. *Mangham v. Hall,* 564 S.W.2d 465, 468 (Tex.Civ.App. 1978); *International-Great Northern R. Co. v. Casey,* 46 S.W.2d 669 (Tex.Comm.App. 1932), holding adopted; *Galveston H. & S. A. R. Co. v. LeGierse,* 51 Tex. 189. The charge to the jury must be sufficient to enable the jury to make an assessment of damages on proper grounds and proper legal principles. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87 (Tex.1973).

The Texas Deceptive Trade Practices Act does not expressly prescribe the measure of damages to be used. At the time this case arose, the Act simply provided that "A consumer may maintain an action if he has been *adversely affected . .*" (Sec. 17.50(a), Tex.Bus.Comm.Code, emphasis ours) and "in a suit filed under this section, each consumer who prevails may obtain: (1) three times the amount of *actual damages . . .*" (Sec. 17.50(b), Tex. Bus.Comm.Code, emphasis ours).

The Plaintiff in this case alleged a cause of action based upon "misrepresentation" by the Defendants. In common law tort actions for fraudulent misrepresentations, Texas courts have adopted the "out of pocket" rule for measuring general damages, i. e. general damages are measured by the difference between the price paid (or the value parted with) and the value received. On the other hand, in actions brought for misrepresentations which are in the nature of breaches of warranty, Texas courts have applied the "loss of bargain" rule for measuring general damages, i. e. general damages are measured by the difference between the value of the goods as warranted

and the value as received. For a more complete discussion of the application of these measured, see "Measure of Damages for Misrepresentation Under the Texas Deceptive Trade Practices Act," 29 Bay.L.Rev. 135 (1977).

■ In determining the proper measure of damages under the Texas Deceptive Trade Practices Act it is our duty to "look diligently for the intention of the Legislature." Art. 10, Sec. 6, Tex.Rev.Civ.Stat., cited in *Woods v. Littleton*, 554 S.W.2d 662, 665 (Tex.1977). In attempting to decipher the Legislative intent as to the measure of damages, we have noted that the Legislature, in 1977, passed Sec. 17.50A of the Deceptive Trade Practices Act which provides that:

"In an action brought under Section 17.50 of this subchapter, actual damages only and attorney's fees reasonable in relation to the amount of work expended and court costs may be awarded where the Defendant:

\*  \*  \*  \*  \*  \*

"(2) proves that . . . within 30 days after he was given written notice he tendered to the consumer (a) the cash value of the consideration received from the consumer or the cash value of the benefit promised, whichever is greater . . ."

Although this provision is designed to create a defense to treble damages under the law and although this provision was passed subsequent to the time that the cause of action arose in this case, we think the wording can still be considered to be indicative of the Legislature's "intent" regarding the measure of general damages under the Act. This provision suggests that either the "out of pocket rule" or the "loss of bargain rule" is appropriate, whichever gives the consumer the greatest recovery. This court has previously ruled that the Texas Deceptive Trade Practices Act is intended to permit recovery of the greatest amount of "actual damages" alleged and proved. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.1978). Therefore, for purposes of the retrial of this case we suggest that the proper measure of general damages is (1) the difference between the value paid for the land and the value of the land as received, or (2) the difference between the value of the land as represented and the value of the land as received, whichever measure affords the greatest recovery. Further we suggest that the submission of the damage issues may be greatly simplified by inquiring, for example: (1) "What do you find from a preponderance of the evidence was the reasonable cash market value on November 4, 1975 of the land purchased by Mr. Willis, had the land been as represented by the Defendants?" and (2) "What do you find from the preponderance of the evidence was the reasonable cash market value on November 4, 1975 of the land purchased by Mr. Willis as it was received by Mr. Willis?" The price paid for the property in question is undisputed in the record, to wit, $11,000.00, and there are no special damages alleged; thus, these two issues should be sufficient to ascertain the damages in this case, under the pleadings before us at this time.

■ Also relative to the damage issues in this case, we would note that in the first trial of this case the court submitted damage issues separately for each of the four defendants. In this regard we would point out that where tortious acts of two or more wrongdoers join to produce an injury, all of the wrongdoers will be jointly and severally liable for the entire damages, unless evidence can be adduced that can apportion the damages with reasonable certainty among the wrongdoers. *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731 (1952). On retrial of this case, submission of separate damage issues for each defendant would be improper in the absence of evidence that would show an apportionment of the damages.

As hereinabove indicated it is unnecessary to consider any other points raised on this appeal since the entire cause must be remanded for retrial. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.