CHRYSLER CORPORATION, Appellant,

v.

James W. McMORRIES, Jr., Appellee.

No. 07–82–0022–CV.

Court of Appeals of Texas, Amarillo.

Aug. 4, 1983.

Gibson, Ochsner & Adkins, Marvin W. Jones, Amarillo, for appellant.

Saul, Smith & Davis, Don Davis, Hereford, Rex Easterwood, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Chrysler Corporation appeals from a judgment entered in favor of appellee James W. McMorries, Jr. in which appellee recovered $18,000 plus interest and attorney's fees. For the reasons hereinafter set out, we reverse the judgment and remand for a new trial.

This lawsuit arose out of a sale of a 1978 Chrysler automobile by Jones Motors of Hereford, Texas to the appellee. The appellee intended to use the automobile in his business and he wanted it to have trailer towing capabilities to pull a camper trailer he used in his work. The appellee informed Dale Jones, the owner of Jones Motors, of his particular needs for the car. Jones showed appellee a Chrysler brochure which discussed a towing package that could serve the appellee's needs. The appellee agreed to and did pay Jones $9,500 for the car.

The car was delivered to the appellee on March 3, 1978. Chrysler's written warranty was also delivered at that time. Soon thereafter, the appellee began experiencing difficulties with the car. Many of the problems were corrected at no cost by the appellant, under the terms of the warranty. However, the appellee claimed that many other problems were not corrected to his satisfaction. Contending that he was dissatisfied with the car, the appellee brought the car back to Jones Motors on July 10,

1978 and instructed Jones to sell it to someone else because he (the appellee) wanted nothing more to do with it. Jones eventually sold the car at an auction in Lubbock for $6,500.00.

On March 7, 1979, the appellee brought suit against the appellant for damages arising from appellant's alleged violations of the Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (Vernon Supp. 1982). Specifically, appellee alleged that appellant had made fraudulent misrepresentations and had breached express and implied warranties concerning the condition of the car, in violation of Section 17.46 of the Act. As a result of these alleged malfactions, appellee sought actual damages in the amount of $15,496.00 and further alleged he was entitled to have these damages trebled. Appellant's answer to the suit contained, inter alia, an exception to the claim for treble damages, asserting appellee failed to give written notice of the claim before suit was filed.

After appellant had filed its answer and some depositions had been taken, but prior to the beginning of the actual trial, appellee elected to take a nonsuit. Soon thereafter, appellee gave appellant written notice of his intent to bring suit against the appellant for the alleged deceptive trade practices. After the passage of more than thirty days, appellee filed a second suit identical, in all its particulars, to the suit filed on March 7, 1979.

At trial, the jury found appellant had misrepresented the condition of the car and had not repaired or replaced the defects in the car in compliance with its warranty, with resulting actual damages to appellee in the amount of $6,000.00. Based upon these findings, the court entered the judgment from which appellant has perfected its appeal.

The appellant raises four points of error in this appeal. In its first point, the appellant argues that the trial court erred in submitting special issue no. 15, which asked the jury to determine the amount of actual damages the appellee suffered, and in awarding judgment based thereon, because this special issue allegedly contained an erroneous and improper standard for measuring damages. Appellant contends, in his second point of error, that the trial court also erred in submitting special issue no. 15 and in awarding judgment based thereon because this special issue failed to properly instruct the jury as to the elements of damages to be considered in answering the issue. Appellant further asserts, in his third point of error, that the trial court erred in submitting special issue no. 15 to the jury and in awarding judgment based thereon because there was no evidence of any legally recoverable damages to support the submission of such issue or the award of damages based thereon. Finally, in his fourth point of error, the appellant maintains that the trial court erred in rendering judgment for treble damages under Tex.Bus. & Com. Code Ann. § 17.50 (Vernon Supp.1982) because the appellee allegedly failed to give notice of his claim before suit was filed, as is required by Tex.Bus. & Com.Code Ann. § 17.50A(a) (Vernon Supp.1982). For the reasons explained below, we sustain appellant's first two points of error, overrule its third and fourth points, reverse the judgment and remand the case for a new trial.

In its above stated first two points of error, the appellant contends that the trial court erred in submitting special issue no. 15 to the jury and in awarding judgment based on the jury's answer to this special issue because said special issue did not correctly state the proper measure of damages for this type of case and because it did not instruct the jury as to the correct measure of damages.

Special issue no. 15, which was submitted to the jury, reads as follows:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate James W. McMorries, Jr. for his actual damages, if any?

This was the only special issue concerning damages which was submitted to the jury. Thus, the initial question which we must determine is whether special issue no. 15

was subject to the vices asserted by appellant.

The trial court has broad discretion to submit separate questions with respect to each element of a case or to submit issues broadly. Tex.R.Civ.P. 277. When the trial court exercises its discretion in submitting special issues to the jury, an appellate court will only reverse when a clear abuse of that discretion is shown. *De-Anda v. Home Ins. Co.,* 618 S.W.2d 529 (Tex.1980). In reviewing the trial court's exercise of its discretion, this court recognizes that, under Rule 277, the trial court's discretion is subject only to the requirement that the issues submitted must fairly submit the disputed issues for the jury's determination. *Baker Marine Corp. v. Moseley,* 645 S.W.2d 486 (Tex.App.—Corpus Christi 1982, writ ref. n.r.e.); *Cactus Drilling Co. v. Williams,* 525 S.W.2d 902 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). While the form of submission of a particular special issue is left to the sound discretion of the court, it is essential that the submission be sufficient to enable the jury to make an award of damages on proper grounds and correct principles of law. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87 (Tex. 1973); *Sawyer v. Fitts,* 630 S.W.2d 872 (Tex.App.—Fort Worth 1982, no writ). A submission is fatally defective if it fails to guide the jury to a finding on any proper legal measure of damages. *Jackson v. Fontaine's Clinics, Inc., supra; Sawyer v. Fitts, supra.* With these guidelines in mind, we will review the propriety of the court's action in submitting special issue no. 15 to the jury.

As the appellee's pleadings make clear, the appellee's cause of action was based on the appellant's alleged violation of the Texas Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Com. Code Ann. § 17.41 *et seq.*[1] Specifically, the appellee alleged that the appellant had fraudulently misrepresented the condition of the car and had breached its warranty in violation of Section 17.46 of the Act, that he had sustained damages as a result of the appellant's malfeasance, and that he was entitled to the relief authorized by Section 17.50(b)(1).

Section 17.50(b)(1) states in relevant part:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of *actual damages* found by the trier of fact ... [emphasis added.]

The term "actual damages" is not defined in the Act. However, the Texas Supreme Court has indicated that, under the Act, the term "actual damages" should be construed to mean those damages which are recoverable at common law. *Brown v. American Transfer and Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474. In a later case, the Court held that "[t]he actual damages suffered under § 17.50(b)(1) are determined by the total loss sustained by the plaintiff as a result of the deceptive trade practices." *Smith v. Baldwin,* 611 S.W.2d 611, 617 (Tex.1980).

When submitting special issues to the jury under a Deceptive Trade Practices Act claim, the issue should be submitted in terms as similar as possible to the statute itself. *Brown v. American Transfer and Storage Co., supra.* In the instant case, while the court submitted the issue of damages in terms identical to the statute, it made no attempt to explain the meaning of the term "actual damages" to the jury. Under the common law, the proper measure of damages is a question of law for the court and the court's charge should limit the jury's consideration to facts that are properly a part of the damages allowable. *Johnson v. Willis,* 596 S.W.2d 256, 262 (Tex. Civ.App.—Waco 1980, writ ref. n.r.e.). It is therefore necessary for us to determine

---

1. We note that the alleged deceptive trade practices occurred in 1978, prior to the passage of the 1979 amendments to the Act. The provisions of the Act that govern this case, therefore, are those that were in effect at the time the alleged deceptive acts occurred. *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 172 (Tex.1980). Thus, all statutory references in this case are to the 1977 version of the Act, except where noted otherwise.

whether special issue no. 15 limited the jury's consideration in this way.

Three recent decisions by the Texas Courts of Appeals are enlightening in this matter. In *Johnson v. Willis, supra,* the trial court submitted a special issue on damages, in a Deceptive Trade Practices Act suit, which is similar to the one submitted by the trial court in the case at bar. The special issue submitted by the court read as follows: "What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate Harold M. Willis for his actual damages resulting from Defendant's _____ misrepresentations or unconscionable actions, if any?" The appellant in that case argued that this issue failed to provide a proper measure of damages for the jury. The Waco Court of Civil Appeals agreed. In agreeing with the appellant's contention that the trial court's broad instruction on damages was improper, the Court looked to the common law rules on damages. Noting that the appellee's cause of action was based upon misrepresentation by the appellant, the appeals court reasoned that the rule for damages in common law tort actions for misrepresentations should be applied in the absence of an express directive as to the proper measure of damages in the Texas Deceptive Trade Practices Act. The court pointed out that, while the legislature was silent on the proper measure of damages that should be used, the legislature did indicate that its intent was, in fact, that the courts should apply the common law rule of damages by its express inclusion of the common law rule of damages in Section 17.50A, the section of the Act which provided a defense to the treble damages penalty contained therein. Since the trial court did not instruct the jury on the measure of damages for the common law tort of misrepresentation, the Waco court concluded that the case must be reversed and remanded.

The Beaumont Court of Appeals was faced with a similar problem in *Stewart v. Moody,* 597 S.W.2d 556 (Tex.Civ.App.— Beaumont 1980, writ ref. n.r.e.). In *Stewart,* the plaintiff also sued the defendant, claiming misrepresentation on the defendant's part in violation of the Texas Deceptive Trade Practices Act. The trial court instructed the jury as follows on the damages issue:

> [W]hat sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would reasonably and fairly compensate the plaintiff for the damages, if any, he has suffered as a result of the occurrence in question?

The jury found that the defendant had injured the plaintiff by his misrepresentations and it further concluded that the plaintiff had sustained $5,000 in damages as a result of the misrepresentation. The plaintiff complained, on appeal, that the court's instruction on the damages issue was erroneous because it did not instruct the jury as to what factors it should look to in determining the amount of damages. The Beaumont Court of Appeals agreed:

> There were no instructions as to what elements of damage should or could be discovered by the jury in arriving at their answer to this issue. This issue, as worded, permitted the jury to take into account anything that it considered as constituting "damages" . . . There were no instructions or limitations with reference to the elements of damage to be considered by the jury. [T]his damage issue, as worded, was erroneously submitted to the jury.

Consequently, the judgment of the trial court was reversed and remanded.

The third instructive case was decided by the Beaumont Court of Appeals a year after its *Stewart* opinion. In *G.W.L., Inc. v. Robichaux,* 622 S.W.2d 461 (Tex.App.— Beaumont 1981, writ ref. n.r.e.), suit was brought by a homeowner against the builders of his home, charging that the builders had violated the Texas Deceptive Trade Practices Act by their alleged failure to build the house according to the terms of the parties' contract. The trial court's charge on the measure of damages asked the jury to determine what amount, if any, would compensate the plaintiff for damages to the roof and ceiling. The defendants, in

their appeal, objected to the charge on the grounds that it did not state the measure of damages with sufficient specificity. In support of their contention, the defendants cited the *Stewart* decision. The Court of Appeals disagreed with the defendants that *Stewart* mandated a reversal on the damages question. The Beaumont court noted that in the *Robichaux* case the trial court's instruction had limited the jury's focus on the damages question to the defects in the roof and ceiling, while in *Stewart* the trial court's instruction contained no such limitation and instead asked the jury to determine the amount of damages the plaintiff suffered as a result of "the occurrence." The use of the nebulous term "occurrence" permitted the jury to take into account anything that it considered as constituting damages, the Beaumont court concluded. By limiting the jury's focus to the damages caused to the roof and the ceiling, the trial court properly instructed the jury on the proper elements it should consider in answering the damages question, the appellate court held.

■ We believe the trial court's charge on the damages issue in the case at bar is subject to the same vices as the damages charges in *Johnson v. Willis, supra,* and *Stewart v. Moody, supra.* The court simply asked the jury to determine what amount of cash would "fairly and reasonably compensate James W. McMorries, Jr. for his actual damages, if any." There are no limitations placed upon what the jury may consider in determining the damages. Given this charge, the jury could have looked to anything at all, including injuries which may not have been caused by the appellant's actions. Because of this danger, the Texas courts have insisted that the trial court limit the jury's consideration to the specific facts that are properly a part of the damages allowable. Consequently, the trial court's judgment must be reversed and remanded. Rule 434 of the Rules of Civil Procedure provides that, where liability issues are contested, a separate trial on unliquidated damages alone shall not be ordered. Since the amount of damages in this case needs to be proved and cannot be fixed by a mere mathematical calculation from ascertained data in the case, the damages are unliquidated. Thus, because a remand is appropriate, the entire case will have to be retried. *Jordan Ford, Inc. v. Alsbury,* 625 S.W.2d 1 (Tex.Civ.App.—San Antonio 1981, no writ); *Bradley v. Castro,* 591 S.W.2d 304 (Tex.Civ.App.—Fort Worth 1979, no writ); *Dean v. Tutor,* 566 S.W.2d 301 (Tex.Civ. App.—Austin 1978, no writ).

■ On remand, the trial court must submit a charge on damages which limits the jury's focus to the specific facts that are properly a part of the damages allowable. As noted above, the term "actual damages" in Sec. 17.50 must be construed, in the absence of an express legislative directive, to mean those damages which are recoverable at common law. *Brown v. American Transfer and Storage Co.,* 601 S.W.2d 931 (Tex.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474.

■ The proper measure of damages is dependent upon the nature of the cause of action. In common law *tort* actions for fraudulent misrepresentations, the so-called "out of pocket" rule for measuring general damages has been applied. Under the "out of pocket" rule, the damages are measured by the difference between the price paid (or the value parted with) and the value received. *Johnson v. Willis,* 596 S.W.2d 256, 262 (Tex.Civ.App.—Waco 1980, writ ref. n.r. e.); *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290, 297–298 (Tex.Civ. App.—Waco 1978, writ ref. n.r.e.).

■ In common law *contract* actions brought for misrepresentations which are in the nature of breaches of warranty, Texas courts have applied the so-called "loss of bargain" rule in measuring damages. Under this "loss of bargain" rule, the damages are measured by the difference between the value of the goods as warranted and the value as received. *Johnson v. Willis, supra; Woo v. Great Southwestern Acceptance Corp., supra.*

In other jurisdictions, neither the "loss of bargain rule" nor the "out of pocket rule"

has been regarded as occupying the field, but instead these courts have held that either of these rules, or variations thereof, may be applied in a proper case to reach the fair and equitable result of properly compensating the defrauded party and avoiding injustice. *Woo v. Great Southwestern Acceptance Corp., supra. See also* Annot., 13 A.L.R.3d 875, § 6. For a more detailed discussion of these rules for measuring damages under the Texas Deceptive Trade Practices Act, see "Measure of Damages for Misrepresentation Under the Texas Deceptive Trade Practices Act," 29 Baylor L.Rev. 135 (1977).

The Texas Supreme Court has never indicated which of these common law rules for measuring damages should be applied in suits arising under the Texas Deceptive Trade Practices Act. However, the Courts of Appeal have generally been very flexible in applying these common law rules. The prevailing view is succinctly explained by the Waco Court of Appeals:

> We believe the Act was intended to permit the adversely affected to recover the greatest amount of "actual damages" he has alleged and established by proof was factually caused by the defendant's conduct. This rule serves the dual purpose of the Act of encouraging consumers to litigate their grievances and of determining unlawful conduct.

*Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d at 298.

To the same effect are the holdings in *Rotello v. Ring Around Products Inc.,* 614 S.W.2d 455, 460 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref. n.r.e.) and *Salais v. Martinez,* 603 S.W.2d 296, 297 (Tex.Civ. App.—El Paso 1980, no writ). *But cf. Raye v. Fred Oakley Motors, Inc.,* 646 S.W.2d 288 (Tex.App.—Dallas 1983, writ ref. n.r.e.) (court ruled that in a Deceptive Trade Practice Act case involving accusations of material misrepresentations and breach of warranty, the actual damages should be measured by the "loss of bargain" rule *except* when the product is rendered valueless as a result of the defect, in which event the "out of pocket" rule is the proper measure.)

■ We believe that the court in *Woo* correctly stated the underlying purpose of the Act. The legislature has directed that the provisions of the Act "shall be *liberally* construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex.Bus. & Com. Code Ann. § 17.44 (Vernon Supp.1982) [Emphasis added.] Consequently, we agree that the flexible approach suggested in *Woo* is correct and we adopt that approach.

An examination of the record as pointed out above, shows that the appellee alleged both fraudulent misrepresentation and breach of the warranty of merchantability on the part of the appellant. The special issues submitted by the court encompassed both appellee's fraudulent misrepresentation claim and his breach of warranty claim. Since the jury found in favor of the appellant on each of the theories, the appellant was entitled to an award of actual damages equal to the greater of the amount which would be awarded by the "out of pocket" rule and the "loss of bargain" rule.

On remand, if justified by the evidence, the court should submit special issues which require the jury to find the amount of actual damages under both the "out of pocket rule" and the "loss of bargain" rule. Those issues should, however, limit the jury's focus to the specific facts that are properly a part of the damages allowable. Appellant's first two points of error are sustained.

Appellant's third point of error, in essence, maintains that this court should not remand the case but should instead render a take-nothing judgment because, it contends, there was no evidence of any legally recoverable damages to support the submission of a damages issue to the jury. For the reasons explained below, we disagree with appellant's contention.

Initially, the appellant argues correctly, we believe, that the express warranty between the parties limited the appellant's

obligations to the repair or replacement of parts which proved defective in normal use during the first twelve months or 12,000 miles of ownership. Appellant contends that there is no evidence showing that the appellant breached its warranty.

Under Rule 277 of the Rules of Civil Procedure, a trial court must submit special issues controlling the disposition of the case if there is some evidence to support the special issues. *Southwestern Bell Tel. Co. v. Thomas,* 554 S.W.2d 672 (Tex.1977). Failure to do so, under such circumstances, is reversible error. *Id.* Special issues no. 9 and 10 directly concern appellant's obligations under the express provisions of the warranty. Special issue no. 9, which was answered affirmatively, asked the jury if· it found from the evidence that appellant had failed or refused to make any repairs or replacements requested by the appellee made necessary because of defects in material or workmanship during the warranty period. In Special Issue 10, the jury found such failure or refusal to be a producing cause of actual damages sustained by appellee.

Appellant contends there was no legally competent evidence to support these jury findings. The record does show that the appellant did repair or replace many items on the automobile as requested by the appellee. For example, when the appellee complained that the car was using excessive amounts of oil, appellant replaced the car's cracked intake manifold at no cost to the appellee. Similarly, when problems occurred with the power steering pump and the air-conditioner clutch, appellant repaired these units at no cost to the appellant. However, appellant did not repair or replace every item in the car which malfunctioned to the appellee's satisfaction. Appellee stated during his testimony that he had requested the appellant to repair problems connected with the car's power output, lack of trailer towing capabilities, windows popping out, and a rumbling vibration coming from the area of the car's differential. Appellee further testified that while the appellant's employees attempted to correct some of these problems they were not able to do so successfully. He complained that these problems still existed even after the repair attempts. It is clear that there was evidence in the record, if accepted by the trier of the fact, to show that the appellant had breached the warranty.

The appellee is not, despite appellant's contentions to the contrary, seeking to repudiate or disregard the warranty. The appellee is seeking damages *because of* appellant's breach of warranty. The evidence adduced at trial was sufficient to support the jury's findings in favor of the appellee on special issues no. 9 and 10. That being the case we do not believe the express warranty bars recovery by the appellee.

Appellant's second argument under this point of error concerns his assertion that the appellee had presented no competent evidence pertaining to the proper measure of damages governing this case. As we noted above in discussion of appellant's first two points of error, the proper measure of damages would be the greater amount between the "out of pocket" rule and the "loss of bargain" rule. Appellant is therefore incorrect when it asserts that the only proper measure of damages is that obtained by the "loss of bargain" rule.

The question thus becomes whether there is sufficient evidence to permit the trial court to submit these damage issues to the jury on remand. We have already noted that the jury's finding that the appellant had failed or refused to repair the car was supported by some evidence in the record, as was its finding that the appellant's failure or refusal was a producing cause of the actual damages sustained by the appellee. Further, there is testimony in the record concerning the purchase price and the price which the appellant received in a later auction of the car. And finally, there is testimony by the appellee and Dale Jones, the seller of the automobile as to the value of the automobile to the appellee, given the uses which he intended to put it to. The appellant complains that the appellee was not sufficiently qualified to testify

about the car's value. However, it is well settled now that the owner of personal property can testify as to its value. *Chrysler-Plymouth City, Inc. v. Guerrero*, 620 S.W.2d 700 (Tex.Civ.App.—San Antonio 1981, no writ); *Classified Parking System v. Kirby*, 507 S.W.2d 586 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ); *Barstow v. Jackson*, 429 S.W.2d 536 (Tex.Civ.App.—San Antonio 1968, no writ). Given this evidence, we conclude that there was sufficient competent evidence indicating that the appellee sustained actual damages.

■ Appellant's third and fourth arguments under his third point of error attack the propriety of permitting the jury to consider certain evidence in its consideration of the damage question. Appellant specifically objected to the trial court's decision to permit the appellee to introduce evidence relating to loss of time from work, loss of use, repairs done to replacement vehicles, and refinancing costs after the vehicle was sold at auction. The appellant maintains that "[a]ll of such damages, if recoverable at all, would be recoverable only as incidental or consequential damages [and that such damages] . . . are not recoverable under the state of the pleadings and facts in this case." According to appellant's argument, the evidence of such damage was insufficient and, even if it was sufficient, the express provisions of the warranty precluded recovery for these damages. We believe that our discussion of the proper rule for measuring damages in this case, in connection with our discussion of appellant's first and second points of error, effectively disposes of these arguments. We cannot say, at this point, whether these objected-to portions of the evidence should properly be considered by the jury on the damages issue. The trial court, after it has had the full advantage of hearing the evidence on remand, will be in a much better position than we are now, to determine whether this objected-to evidence is relevant to the question of compensation.

In his fourth point of error, the appellant contends that the trial court erred in rendering judgment for treble damages under Section 17.50 of the Texas Business and Commerce Code because the appellee, according to appellant's argument, failed to give notice of his claim before suit was filed. We disagree.

Section 17.50A specifically provided:

In an action brought under Section 17.50 of this subchapter, actual damages only and attorney's fees reasonable in relation to the amount of work expended and court costs may be awarded where the defendant . . .

(2) proves that he had no written notice of the consumer's complaint before suit was filed . . .

The appellant argues that, in this case, the record establishes that appellee failed to give such written notice prior to the time he filed his suit.

Appellee originally filed suit against the appellant on March 7, 1979. In his brief, the appellee concedes that he never gave the appellant the required notice prior to the filing of the March 7, 1979 lawsuit. However, on April 11, 1980, the appellee chose to take a nonsuit on this cause of action. He then served the appellant with written notice of his intention to sue under the Deceptive Trade Practices Act. More than thirty days later, the appellee filed suit against the appellant. This second suit was identical, in its particulars, to the first lawsuit filed by the appellee on March 7, 1979. The appellant contends that the filing of the second suit, since it was identical to the first suit, was simply an attempt by the appellee to circumvent the notice provision of Section 17.50A.

■ Rule 164 of the Rules of Civil Procedure provides that "[u]pon the trial of any case at any time before plaintiff has rested his case, i.e. has introduced all of his evidence other than rebuttal evidence, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief." *Greenberg v. Brookshire*, 640 S.W.2d 870 (Tex.1982, motion for mandamus granted); *McQuillen v. Hughes*, 626 S.W.2d 495 (Tex.1981). In the original action, appellant had made no claim for

affirmative relief prior to the nonsuit. Thus, the appellee was entitled to take a non-suit on his March 7, 1979 original lawsuit. Since he then fully complied with the provisions of Section 17.50A, by giving the appellant 30 days written notice prior to the filing of the second lawsuit, we do not believe he is barred from recovering treble damages if he prevails on remand. Accordingly, appellant's fourth point of error is overruled.

The judgment of the trial court is reversed and the cause remanded for new trial.