UNITED VENTURES, INC., Appellant,

v.

SAMSILL BROTHERS PLASTIC CORPORATION, Appellee.

No. 17728.

Court of Civil Appeals of Texas, Fort Worth.

Aug. 6, 1976.

Rehearing Denied Sept. 10, 1976.

Hugh O. Mussina, Dallas, for appellant.

Law, Snakard, Brown & Gambill and Robert M. Randolph, Marvin Champlin, Fort Worth, for appellee.

OPINION

SPURLOCK, Justice.

This suit was brought by Samsill Brothers Plastic Corporation against United Ventures, Inc., to recover damages for breach of a contract in which United sold a portion of its business to Samsill. United answered by general denial, there was no breach of the contract, and no measure of damages is alleged. United appeals from an adverse judgment rendered on a jury verdict. It predicates this appeal on the asserted errors that no breach of contract was alleged or proved, the jury's answers to vital issues were immaterial, no evidence and insufficient evidence points, and damages awarded are excessive.

We affirm.

United, a corporation, operated three divisions: Printers Bindery in Dallas, Graphic Bindery in Fort Worth, and B. G. Wilkes Company, a sales office for Graphic Bindery in Oklahoma City.

Samsill and United were each in the business of manufacturing and selling vinyl plastic products. United, having suffered serious losses, sold its Graphic Bindery division to Samsill Brothers on February 22, 1971, for a consideration of $50,000.00.

In summary form the property and rights purchased by Samsill consisted of (1) equipment and machinery located in Oklahoma City and furniture located in Fort Worth and Oklahoma City; (2) the right to use the names "B. G. Wilkes," and "Graphic Bindery, Inc.," primarily so Samsill could bill and collect directly from United's vendees, in view of United's precarious financial condition; (3) the right to manufacture all orders to be placed by Wilkes for stated vinyl products, including orders place by Wilkes' office; and (4) the right to production records, sales records, and any other information needed to carry forward all past and present business accounts of United which dealt with electronically sealed vinyl and related products.

The contract also included a covenant that neither seller, its affiliates, nor its major stockholders would manufacture or sell any products (with one exception not pertinent here) then being sold by it, or similar items, within a 1,000 mile radius of Fort Worth for a period of 5 years from the closing date.

United, by its own request, retained samples, records, and job tickets from previous jobs as an aid to its salesmen in selling to prior and prospective customers. These records were an excellent aid in that respect.

In late July or early August, 1971, United approached Samsill offering to sell it the Wilkes division. Samsill countered that it felt it had already bought everything there was to buy, and that if United were to sell it again, Samsill would have no choice but to sue for breach of contract.

United had already begun negotiations with Mr. Lewis, an official of ABCO, who was familiar with the Wilkes operation. He was one of the founders of Graphic Bindery and had been president of United.

Thereafter on August 24, 1971, United sold the Wilkes operation to ABCO, including the non-exclusive right to use the B. G. Wilkes Company name. The contract for sale contained a non-competition clause in which United agreed not to sell named vinyl items in an area roughly equivalent to the 1,000 mile radius of Fort Worth in which United had contracted with Samsill not to sell. This contract also specifically sold to ABCO the job tickets and control cards kept by Wilkes.

Anticipating this lawsuit, United included an indemnification clause, specifically naming Samsill as a possible litigant over these same rights. The sale price of $25,000.00 was paid to United. The president of United testified that he believed the job tickets and control cards already belonged to Samsill and that in selling them to ABCO, "I probably did wrong."

From the time of closing of this sale no further orders were received by Samsill from Wilkes. Prior thereto these orders had amounted to about $15,000.00 per month.

United urged that Samsill had not been damaged because, even though it did not receive everything it bargained for, the equipment was worth more than the entire consideration Samsill had paid. There was evidence that it was worth considerably less; but even if it were not, Samsill was damaged in the amount of the difference between what it contracted for and what it contracted for but did not receive; its "loss of the bargain." There was ample evidence to support the jury's finding that Samsill was damaged in the amount of $19,000.00.

The executive officer for United testified that the furnishings and office equipment sold to ABCO were worth $830.00. That contract recited that the inventory and materials had a value of $2,500.00. Samsill contended that since the Wilkes operation

was sold to ABCO for $25,000.00, and since $830.00 of this amount was for office furnishings and equipment and $2,500.00 was for inventory and materials for resale, the balance of $21,670.00 represents the value of the Samsill records which were sold to ABCO. In addition to the damages described above, United placed ABCO in a position to compete effectively with Samsill, by its breach.

The jury found (1) United contracted and sold to ABCO all job tickets and control cards of its Wilkes division after February 22, 1971; (2) this act damaged Samsill; (3) after February 22, 1971, United sold and delivered to ABCO the files of order forms, invoices and samples located at the Wilkes offices; (4) this act damaged Samsill; (5) after February 22, 1971, United failed to forward to Samsill any orders received from its customers which were to be manufactured by Samsill; (6) this failure damaged Samsill; (7) Samsill was damaged in the sum of $19,000.00.

In its brief, United assigns 12 points of error. By one point, it asserts no proper measure of damages has been pleaded. By four points, it asserts the jury findings are immaterial. By five points, it asserts the jury's findings are against the overwhelming weight and preponderance of the evidence. One point asserts the damages found are grossly excessive, and one asserts that Samsill has failed to prove breach of contract.

United contends that the jury's answers to Issues 1 and 3 are immaterial because these acts would not constitute a breach of contract, and the answers to Issues 2 and 4 are therefore also immaterial.

The evidence clearly shows that under the contract, the records described in Issues 1 and 3 were sold to Samsill. United's act of selling them afterwards to ABCO constituted a breach of contract which damaged Samsill.

We overrule points 4, 5, 7, 10 and 11.

Defendant's second point asserting error because no proper measure of damages has been pleaded is overruled because it is not necessary to plead the proper measure of damages in order to recover. "All that is necessary is that the petition sufficiently allege facts establishing a cause of action from which the court can determine the proper measure of damages. If the facts establishing the cause of action are sufficiently set up in the pleadings, and if they are supported by the evidence, the measure of damages is a matter of law for the court." 17 Tex.Jur.2d 263, Sec. 197, "Measure of damages" (1960). *Beeson v. Marshall*, 353 S.W.2d 234 (Tex.Civ.App., Austin, 1962, ref., n. r. e.).

We overrule point of error 2.

United asserts by its remaining points of error that the jury's findings are against the great weight and preponderance of the evidence. We hold there is sufficient evidence to support the jury's findings on each of these issues, and that its findings on each issue are not so against the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong. A detailed statement of the evidence pro and con on each issue, beyond the summary given at the beginning of this opinion, would extend this opinion to an unreasonable length, contrary to Rule 452, T.R.C.P., which instructs the Courts of Civil Appeals to be as brief as practicable. *Jackson v. International Service Insurance Co.*, 450 S.W.2d 896 (Tex.Civ.App., Fort Worth, 1970, ref., n. r. e.).

Points 1, 3, 6, 8, 9, and 12 are overruled.

We have considered each point of error and severally overrule each.

Judgment affirmed.