Gloria Limmer DENMAN, Appellant,

v.

Donald H. BURRIS, Individually and d/b/a Pro Services Co., a Subsidiary of Lyles Oil Tools, W.C. Lyles, Individually and d/b/a Lyles Oil Tools, a Sole Proprietorship, and Lyles Oil Tools of Utah, Inc., Appellees.

No. 08–90–00335–CV.

Court of Appeals of Texas, El Paso.

Aug. 14, 1991.

Rehearing Overruled Sept. 25, 1991.

Jay Gibson, Odessa, for appellant.

Robert E. Motsenbocker, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, for appellees.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In an automobile negligence action, the jury returned a verdict that found that the plaintiff was ninety percent negligent and one of the defendants was ten percent negligent, resulting in a take-nothing judgment. On appeal, plaintiff contends in a single point of error that the definition of "light truck" submitted to the jury was a misstatement of the law, constituted a comment of the weight of the evidence and acted to confuse rather than assist the jury in answering the questions. We reverse and remand.

On August 7, 1986, Gloria Limmer Denman (Denman), Appellant, was driving on Interstate Highway I–20 enroute to Monahans after attending a night class in Odessa. She left Odessa about 10 p.m. and remembers topping the caprock hill and seeing the lights at Penwell. The next thing she remembers is waking up in the hospital and being asked questions. The evidence showed that Denman had struck the rear of a wireline truck which was parked on the side of the highway, the left side on the improved shoulder and the right side off the pavement on caliche about a mile below the caprock crest, four to eight feet directly behind a van similarly parked on the shoulder. The exact positions of the two vehicles in relation to the right traffic lane was disputed. Both vehicles were owned by W.C. Lyles and used in his business, Lyles Oil Tools (Lyles), Appellee. Donald H. Burris was the driver of the van and Billy Bob Barnes was the driver of the truck.

The truck had become disabled and the van had stopped to render assistance. The two men were in the process of transferring tools and equipment from the truck to the van after determining that the truck could not be driven. Spotlights located at the top rear of the van, used for night oilfield work, were turned on to illuminate under the hood of the truck. The undisputed evidence is that the wireline truck was a one ton pickup truck which had been converted by removal of the pickup bed and replacing it with a flat bed on which was mounted wireline equipment. There is evidence that the factory-rated carrying capacity had not been altered by the modification and that the overall length, including a pole, was probably less than thirty feet. It is undisputed that the truck carried neither flares, red electric lanterns or portable red emergency reflectors and its lighting system was incapable of being operated at the time because of electrical failure.

At the conclusion of the evidence, a charge was submitted to the jury which included the following definitions and instructions taken from the indicated sections of Tex.Rev.Civ.Stat.Ann. art. 6701d (Vernon 1977 and Vernon Supp.1991):

"Truck" means every motor vehicle designed, used or maintained primarily for the transportation of property. [Section 4(a)].

"Light truck" means any truck with a manufacturer's rated carrying capacity not to exceed 2,000 pounds and is intended to include those trucks commonly known as pick up trucks, panel delivery trucks and carry-all trucks. [Section 2(h)].

.     .     .     .     .

Every bus, truck, truck tractor, trailer, semi-trailer or pole trailer 80 inches or more in overall width and 30 feet or more in overall length shall be equipped with lamps for the purpose of warning the operators of other vehicles of the presence of a vehicular traffic hazard requiring the exercise of unusual care in approaching, overtaking or passing .... [Section 125(d)].

It is unlawful for any person to operate any truck, bus, or truck tractor, or any motor vehicle towing a house trailer upon ... any divided highway at any time from a half hour after sunset to a half hour before sunrise unless there shall be carried in such vehicle at least three flares or three electric lanterns or three portable red emergency reflectors, .... [Section 137(a)1].

Whenever any truck, bus, truck tractor, trailer, semi-trailer, or pole trailer 80 inches or more in overall width or 30 feet or more in overall length is stopped upon a roadway or adjacent shoulder, the driver shall immediately actuate vehicular hazard warning signal lights.... Whenever any vehicle of a typed (sic) referred to in this section is disabled, or stopped for more than ten (10) minutes upon any roadway of a divided highway during the time lighted lamps are required, the appropriate warning devices prescribed above shall be placed as follows: .... [Section 138(a) and (d)].

During the trial when Lyles requested the court to take judicial notice of the Section 2(h) definition of "light truck," Denman's objection was that the definition had no relevance to Sections 137 and 138 and would only tend to confuse the jury. In overruling that objection, the court expressed doubt about the relevancy of the definition. In her objections to the charge, Denman contended that the light truck definition constituted a comment on the weight of the evidence, was "designed to nudge the jury" and would not assist it since the term "light truck" was "no where used in any of the statutes in issue."

■ An objection to a jury charge is required to point out distinctly the objectionable matter and the reason for the objection. Tex.R.Civ.P. 274. The grounds given must be specific enough to support the conclusion that the trial judge was cognizant of the grounds and still overruled it. *Anderson v. Higdon,* 695 S.W.2d 320 (Tex. App.—Waco 1985, writ ref'd n.r.e.). Objections complaining that the instruction "may confuse the jury" or may "prejudice the defendant" are in the absence of further explanation too general to preserve error. *Castleberry v. Branscum,* 721 S.W.2d 270 (Tex.1986). In this case, however, it is clear from Denman's objection during the trial as well as her objection to the charge and from the court's response that the latter understood the complaint at the times the objections were overruled.

■ Denman argues that the definition of "light truck" had no relevance to her

cause of action under Sections 137 and 138 because the wireline truck was stopped at the time and the only other place "light truck" is mentioned under the traffic regulations of Article 6701d is in Section 166(a)5.b. and c. regulating vehicular speeds. Being irrelevant and unnecessary, she argues that the definition would only tend to confuse the jury. Lyles contends, and argued quite forcefully to the jury, that the wireline truck was a light truck and was therefore excluded from the requirements of Sections 137 and 138.

We agree with Denman's contention that the definition of "light truck" had no application to her case and was erroneously included in the charge. A close reading of the relevant sections of the traffic regulation leads us to the conclusion that Section 137 applies to light trucks, including pickup trucks, whereas Section 138 does not apply to those vehicles unless they exceed the width or length minimums. Under Section 2(h), "light truck" is defined as "any truck." Both Sections 137 and 138 apply to "any truck," not to "any truck, except light trucks" as is the case in Section 166(a)5.b. Section 137(a) begins, "No person shall operate *any truck, bus or truck tractor, or any motor vehicle towing a house trailer, ...*" with a comma before the last disjunctive "or" which makes it clear that "towing a house trailer" applies only to "any motor vehicle." (Emphasis added). In contrast, Section 138(a) commences, "Whenever *any truck, bus, truck tractor, trailer, semi-trailer or pole trailer eighty (80) inches or more in overall width or thirty (30) feet or more in overall length* is stopped...." (Emphasis added). There is no comma before the "or," which means that the width and length minimums apply to each of the named vehicles, not just to pole trailers. Failure of the driver of a vehicle included under Section 138 to deploy the warning devices in the required manner would be negligence per se as to anyone whose injury was proximately caused by such failure. On the other hand, whether the failure of the driver of a vehicle covered by Section 137 but not by Section 138 to deploy the required warning

devices was negligence or not as to a person whose injury was proximately caused by that failure would be a matter for the fact finder to determine.

■■■ Having determined that it was error for the court to include the definition of "light truck" in the charge, we must next examine Lyles' claim that the error, if any, was harmless under the evidence in this case. Error in the submission of an instruction or issue constitutes reversible error only if harm is suffered by the complaining party. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749 (Tex.1980). Whether harm has been suffered must be determined from an examination of the record as a whole. *Boatland*, 609 S.W.2d at 750. An exception may exist where an erroneously submitted definition, though correct, confuses or misleads the jury. *Boatland, Id.* at 750.

■■ In our view, the definition of "light truck" could have had a tendency to confuse or mislead the jury in this case. While the erroneously given definition was followed by a properly given and worded definition of "truck" and the instructions relating to Sections 137 and 138, also correctly worded, made it clear that they applied to "any truck" in the case of Section 137, and "any truck" that exceeded the minimum width or length dimensions in the case of Section 138, it is quite possible that the jury concluded that the wireline truck, being a light truck under the definition, was not subject to the requirements of Section 137. Such a conclusion would have a mitigative effect on percentage of negligence found to be attributable to Lyles.

The jury found Denman ninety percent negligent and Lyles ten percent. All of the evidence with the exception of the testimony of Denman's expert was that the stopped wireline truck and van were completely over on the improved and unimproved shoulder of the highway. Had the jury considered that the wireline truck, as a "light truck," was not subject to the requirements of either Sections 137 or 138, the only other possible acts of negligence on the part of Lyles would be in failing to have the wireline truck off the traveled

portion of the highway and having white lights mounted on the rear of the van, aimed so that a portion of the beam would strike the windshield of another vehicle. Denman herself only remembered topping the caprock and seeing the Penwell lights in the distance. The next thing she remembered is waking up in the hospital. In the intervening one mile, she apparently saw neither bright lights nor vehicles although the evidence was that both would have been clearly visible to her at various distances from the point of impact by the light emitted both by her headlamps and the van spotlights. This is a comparative negligence case. The jury could have easily concluded from Denman's own testimony and other ample evidence that the accident was caused entirely by her negligence. Instead it found that ten percent of the negligence causing the accident was contributed by Lyles. If, in the absence of the "light truck" definition, the jury had been instructed that the wireline truck was required to carry the emergency warning devices under Section 137, it may well have concluded that the failure to deploy them under the conditions then prevailing was negligence and a proximate cause of the accident. Officer Ford, who investigated the accident, testified that the failure to deploy the warning devices was a contributing cause of the accident along with the lights on the rear of the van. He also said that even if Denman had been inattentive, the deployment of flares or reflectors might have prevented the accident. Denman has demonstrated sufficiently that the erroneous inclusion of the "light truck" definition probably resulted in an improper verdict. After considering the entire record, including argument of counsel, we conclude that the inclusion of the definition was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. *Priest v. Myers*, 598 S.W.2d 359, 363 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *Sanders v. Davila*, 593 S.W.2d 127, 130 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Terrell Wells Health Resort v. Severeid*, 95 S.W.2d 526, 531 (Tex.Civ.App.—Eastland 1936, no writ). 3 R. McDonald, Texas Civil Practice

§ 12.37.3 (1983). Denman's point of error is sustained.

Upon retrial, we would suggest that the trial court not include in its charge definitions which are either irrelevant or not supported by the evidence. Our review of the record found no evidence to support a finding that either the wireline truck or the van were at least 80 inches in overall width or at least 30 feet in overall length, in which event the jury should not have been given an instruction on Section 138, as well as the "light truck" definition.

Judgment is reversed and the cause is remanded for a new trial.