**HEDLEY FEEDLOT, INC., Appellant,**

v.

**WEATHERLY TRUST, Appellee.**

**No. 07–92–0246–CV.**

Court of Appeals of Texas,
Amarillo.

May 17, 1993.

Rehearing Overruled July 12, 1993.

Gene E. Steed, Perryton, for appellant.

Bradley M. Pettiet, Jones, Flygare, Galey, Brown & Wharton, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

## ON MOTION FOR REHEARING

BOYD, Justice.

The motion for rehearing of appellee Weatherly Trust is granted. Accordingly, our opinion dated March 24, 1993, is withdrawn, our judgment set aside, and the following opinion substituted.

Appellant Hedley Feedlot, Inc., (Feedlot) brings this appeal from a judgment in favor of appellee Weatherly Trust (Trust) for losses sustained in a cattle feeding venture. In its suit, the Trust attributed its losses to misrepresentations by the Feedlot about the cattle purchase. For reasons hereinafter expressed, we affirm the judgment of the trial court.

The suit originated in February of 1988 when the Trust,[1] acting through Bill Weatherly, (Weatherly) purchased cattle, feed, medicine, and feeding services from

---

1. Weatherly Trust is a family trust consisting of five individual trusts. The trusts were created by Bill Weatherly's father for the benefit of his five children, with a trust established for each child. Bill Weatherly and his mother acted as co-trustees for the five trusts. As co-trustee, Bill Weatherly had authority to transact all business for the Trust.

the Feedlot. The Trust lost $17,439.16 on its investment, as well as its expected profits. The Trust alleged that the Feedlot violated § 17.46(b)(5) of the Deceptive Trade Practices Act (DTPA) by misrepresenting the characteristics of the goods and services purchased by the Trust, and violated § 17.46(b)(7) of the DTPA by misrepresenting the quality of the goods and services sold to the Trust.

The Trust contended that it relied upon the false, misleading, and deceptive representations of the manager of the Feedlot,[2] Sammy Slover, in making its decision to purchase the cattle and services provided by the Feedlot. Slover made various representations to Weatherly regarding the type of cattle, weight, projected cost of feeding, the length of time on feed, and the projected gain of the cattle. The Trust further alleged that these representations were a producing and proximate cause of the losses it suffered.

In three of its nineteen points,[3] the Feedlot attacks the finding that the Trust is a "consumer" as that term is defined by § 17.45(4) of the DTPA. We will address these points topically rather than seriatim.

■ In order to support a judgment based on a violation of the DTPA, the complainant must be a consumer of goods. *Lochabay v. Southwestern Bell Media,* 828 S.W.2d 167, 170 (Tex.App.—Austin 1992, n.w.h.). Whether a complainant is a consumer under the DTPA is a question of law to be determined by the court. *Johnson v. Walker,* 824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, n.w.h.).

The DTPA defines consumer as:

an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987).

■ A complainant must establish at least two requirements to qualify as a consumer under the DTPA. First, the complainant must have sought or acquired goods or services by purchase or lease; and second, the goods or services purchased or leased must form the basis of the complaint. *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351–52 (Tex.1987); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981); *Herndon v. First Nat. Bank of Tulia,* 802 S.W.2d 396, 399 (Tex.App.—Amarillo 1991, writ denied).

■ "Goods" are defined as "tangible chattels[4] or real property purchased or leased for use." Tex.Bus. & Com.Code Ann. § 17.45(1) (Vernon 1987). The section defines "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id.* at § 17.45(2). Standing as a consumer must be established in terms of the complainant's relationship to the transaction, not by the contractual relationship with the defendant. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 368 (Tex.1987); *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983).

---

2. The sole stockholder of the Feedlot, Jay Rippy, had given authority to manage the Feedlot, and the authority to enter the type of business transaction with the Trust, to Slover.

3. Specifically, in point one, appellant contends the trial court erred in determining the Trust was a consumer as defined by the DTPA, in point six, appellant asserts the trial court erred in submitting Question 5, which asked the jury to determine if the Trust was a consumer. Appellant contends this was erroneous because the Trust is not an individual, partnership or corporation. In its seventh point, appellant argues

the trial court erred in entering the judgment for the Trust in that a trust is not a consumer as defined by the DTPA.

4. According to Black's Law Dictionary, a chattel is an article of personal property, as opposed to real property. Black's Law Dictionary 215 (5th ed. 1979). It is movable and may refer to animate as well as inanimate property. *See Scholtz v. Sigel,* 601 S.W.2d 516, 519 (Tex.Civ.App.—Dallas 1980, no writ) (stating that a horse is a tangible chattel which can be the subject of a deceptive trade practice).

The Trust satisfied these two requirements. The Trust purchased the cattle and feeding services from the Feedlot. Second, the Trust primarily complained of the low profitability of the cattle at the time of sale, and attributed its losses to the actions of the Feedlot.

Trusts have been held to be consumers within the meaning of the DTPA. For example, in *Citizens State Bank of Dickinson v. Bowles*, 663 S.W.2d 845, 847 (Tex. App.—Houston [14th Dist.] 1983, writ dism'd), the appellee-trustee, on behalf of the trust, won a suit against the independent executor of an estate for breach of contract, fraud, and violations of the DTPA. After setting out the definition of a consumer, the court found that the appellee-trustee was a consumer. *Id.* at 849.[5]

The Feedlot also argues that the cattle were not acquired "for use" as a consumer, but rather were an investment, *i.e.*, for resale, in the commercial cattle feeding market. We do not agree. Even though the goods are purchased for resale, this does not preclude a complainant from maintaining an action under the DTPA. *Otto, Inc. v. Cotton Salvage & Sales, Inc.*, 609 S.W.2d 590, 595 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd).

In a factually analogous case, *Gable v. Wood*, 622 S.W.2d 884, 886 (Tex.App.—Fort Worth 1981, writ dism'd), the court addressed the issue of cattle feeders in the context of DTPA violations. The defendants argued that the plaintiffs, who placed cattle at defendant's feedlot, were not consumers because the cattle were purchased by plaintiff for resale. *Id.* at 886. In holding that the plaintiffs were consumers within the meaning of the DTPA, the court stated that the fact that the cattle are kept by plaintiffs for resale is irrelevant to the determination of consumer status. *Id.* The court pointed out that the feedlot furnished feedstuffs, medicines, and other services used or consumed by the cattle, which the plaintiff did not resell.

*Id.; see also Hennessey v. Skinner*, 698 S.W.2d 382, 385 (Tex.App.—Houston [14th Dist.] 1985, no writ) (court held that "the purchase of cattle for commercial cattle raising purposes generally is a purchase of goods 'for use' covered by the DTPA").

We conclude that the Trust is a consumer for purposes of the DTPA. Accordingly, we overrule points of error one, six and seven.

In appellant's second point of error it argues that the trial court erred in denying its special exception to the petition which complained of the failure to join necessary and indispensable parties, to-wit, the beneficiaries of the Trust.

Joinder of parties is controlled by Rule 39 of the Texas Rules of Civil Procedure, which requires a person to be joined in only two circumstances. First, a person must be joined if complete relief cannot be afforded in his absence. Tex.R.Civ.P. 39(a)(1). Second, a person must be joined if he claims an interest in the litigation and disposition in his absence will (i) impede his ability to protect his interest, or (ii) create a risk that the parties will be subject to inconsistent obligations. *Id.* at (a)(2).

The compulsory joinder rule focuses not so much on whether the court has jurisdiction over the parties, but rather on whether the court ought to proceed with the parties before it. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200, 204 (Tex.1974); *Texas Oil & Gas Corp. v. Ostrom*, 638 S.W.2d 231, 233 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). One of the policies behind the rule is to lessen the numbers of categories of indispensable parties. 1 Roy W. McDonald, Texas Civil Practice § 5.37 (1992). The Texas Supreme Court has stated, "it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already

---

5. The Fifth Circuit has reached the same result in *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 209 (5th Cir.1991). The trusts alleged that *Fireman's* violated the DTPA by issuing various bonds. The court left open the possibility that a trust could be a consumer within the DTPA. However, the court explained that in that case it would be unlikely that the trusts had assets of less than $25 million, a requirement for entities to be a consumer. *Id.*

joined." *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d at 204.

Generally, the trial court has broad discretion under the rules of civil procedure in questions regarding the joinder of parties, and its determination will not be disturbed on appeal except for abuse of discretion. *Lawyers Civil Process v. State ex rel. Vines*, 690 S.W.2d 939, 944 (Tex.App.—Dallas 1985, no writ); *Williamson v. Tucker*, 615 S.W.2d 881, 886–87 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Even under the rule regarding joinder of persons needed for just adjudication, there is "no arbitrary standard or precise formula for determining whether a particular person falls within its provisions." *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d at 204; *Lawyers Civil Process v. State ex rel. Vines*, 690 S.W.2d at 944. Cases involving joinder disputes must turn on an application of the particular facts involved. *Lawyers Civil Process v. State ex rel. Vines*, 690 S.W.2d at 944; *Williamson v. Tucker*, 615 S.W.2d at 887.

The general rule is that in suits involving trust property, both the trustee and the beneficiaries should be made parties. *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 382 (1945); *Citizens State Bank of Dickinson v. Bowles*, 663 S.W.2d at 848. However, this rule does not apply where the terms of the trust dictate the power to litigate expressly upon the trustee. *Citizens State Bank of Dickinson v. Bowles*, 663 S.W.2d at 848. In actions adverse to a trust, if the dispute involves no conflict between the trustee and the beneficiaries, or between the beneficiaries themselves, a trustee may sue or defend in the trustee's own name when, either by express grant or necessary implication, that power is vested in the trustee. *McDonald v. Alvis*, 154 Tex. 570, 281 S.W.2d 330, 331 (1955); 1 Roy W. McDonald, Texas Civil Practice § 5.45(a) (1992). In addition, in the absence of a conflict of interest, or of a pleading that they are inadequately represented, the beneficiaries who did not participate in the trial are not considered necessary parties to the case. *Transam. Lease Co. v. Three Bears, Inc.*, 586 S.W.2d 472, 477 (Tex.1979). Here, the beneficiaries made no complaint of the representation by Weatherly, and they did not assert a claim of conflict of interest.

The terms of the trust instrument and the purpose of the suit must be examined to determine whether a suit may be prosecuted by the trustee without joining the beneficiaries. *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d at 383. According to the Trust, the trust instrument guided the decision of the trial court when it determined that the beneficiaries did not have to be joined. The record before us does not contain a trust instrument. We note that it is the burden of appellant to bring up the whole record, and if it brings up only a part of the record, every reasonable presumption will be indulged in favor of the trial court's ruling. *Mobile Housing, Inc. v. Moss*, 483 S.W.2d 56, 57–58 (Tex.Civ.App.—Tyler 1972, no writ). Thus, we presume that the trial court had the trust instrument before it when making its determination, and acted accordingly. We conclude the trial court did not err in denying the special exception to join the Trust beneficiaries, and we overrule the Feedlot's second point of error.

In its third point, the Feedlot maintains that the trial court erred in overruling its eighth special exception, in which it alleged the Trust could not be a plaintiff on the grounds that the investment in cattle feeding for the purpose of making money is not a proper investment for a trust, thus preventing it from being a consumer under the DTPA. According to the Feedlot, § 113.056 of the Texas Property Code "provides the items that are available for investment for Trusts. Cattle Feeding is not among those authorized investments." Again, we do not agree.

Subsection (b) of § 113.056 provides "a trustee may acquire and retain *every kind of property and every kind of investment* that persons of ordinary prudence, discretion, and intelligence acquire or retain for their own account." Tex.Prop.Code Ann. § 113.056(b) (Vernon Supp.1993) (emphasis

added).[6] We are not concerned with subsection (a) because, as we mentioned earlier, no trust instrument is before us to examine terms. The language of § 113.-056(b) includes investments in cattle. Most importantly, we find that these provisions pertain to the actions brought by beneficiaries against a trustee for losses incurred from investments, rather than authorizations for non-beneficiaries to challenge the investments of a trustee on behalf of a trust. *See Harvey v. Casebeer*, 531 S.W.2d 206, 208 (Tex.Civ.App.—Tyler 1975, no writ). The Feedlot's third point is overruled.

In its fourth point, the Feedlot alleges the trial court erred in entering judgment against the Feedlot because the Trust failed to prove that the acts of Slover were done with full authorization or ratification by the Feedlot, and were within the scope of his employment.

■■■ Although traditional common law defenses are not controlling in a statutory DTPA action, *Shenandoah Assoc. v. J & K Properties*, 741 S.W.2d 470, 496 (Tex. App.—Dallas 1987, writ denied), we do not have to reach this issue. According to the sole owner of the Feedlot, Jay Rippy, Slover had the authority to enter the transaction with the Trust. Specifically, counsel for the Trust asked Rippy: "Are you telling the jury that Mr. Slover did not have the authority to make a deal with Mr. Weatherly?" His reply: "I would say that he had the authority."

We find that Rippy's admission that Slover had the authority to enter the transaction with the Trust constituted evidence establishing that the acts of Slover were within the scope of his employment. We

therefore overrule the Feedlot's fourth point of error.

In its fifth point, the Feedlot contends the trial court erred by failing to grant its tenth special exception, filed on September 26, 1991, to appellee's September 23, 1990 Second Amended Petition.[7] The Feedlot maintains that the Trust failed to plead with fair notice both the measure of damages sought, and any item of special damages.

The Trust's Third Amended Petition, filed January 15, 1992, renders the first part of appellant's complaint moot. In paragraph VI of that petition, the Trust estimated its losses incurred on the feeding of the cattle and losses of expected profits at $25,139.16.

■■■ The Trust did not plead special damages, nor did the jury award any special damages. Thus, Rule 56 of the Texas Rules of Civil Procedure which requires claims for special damages to be specifically stated is not applicable. Tex.R.Civ.P. 56.

■■■ It is not necessary for a complainant to *allege* the measure of damages in order to recover damages. *Parker v. McGinnes*, 594 S.W.2d 550, 552 (Tex.Civ. App.—Waco 1980, no writ) (emphasis added). Rather, the complainant's petition must factually plead a cause of action from which the court can determine the proper measure of damages. *Id.* The measure of damages under the pleadings is a matter of law for the court. *Id. United Ventures v. Samsill Bros. Plastic Corp.*, 540 S.W.2d 577, 579 (Tex.Civ.App.—Fort Worth 1976, no writ); *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 622 (Tex.Civ.App.—Beaumont 1934, writ ref'd); *International–Great Northern R. Co. v. Kuhlmann*, 26 S.W.2d 451, 452 (Tex.Civ.App.—Austin 1930, writ

---

6. The broad grant of authority to engage in a wide range of investments provided in subsection (b) is limited by subsection (a) which states in pertinent part:
   [u]nless the terms of the trust instrument provide otherwise, in acquiring, investing, reinvesting, exchanging, retaining, selling, supervising, and managing trust property, ... a trustee shall exercise the judgment and care under the circumstances then prevailing that persons of ordinary prudence, discretion, and

intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income from as well as the probable increase in value and the safety of their capital.
Tex.Prop.Code Ann. § 113.056(a) (Vernon Supp. 1993).

7. The Second Amended Petition is not included in the record on appeal.

ref'd). We find the Trust's petition pled a cause of action from which the court could determine the proper measure of damages. Therefore, we overrule the Feedlot's fifth point.

In its eighth point, the Feedlot contends that the trial court erred in failing to submit to the jury several requested questions regarding new and independent causes of the actual losses suffered by the Trust. The Feedlot contends these new and independent causes became the sole and efficient cause of the Trust's actual losses, thereby negating its liability to the Trust. The majority of the requested questions focused upon various management decisions of Weatherly and the Trust. Three of the requested questions asked the jury to find that the snow and rain, abortion of heifers, and the increase in the cost of feed for the cattle constituted new and independent causes for the actual loss suffered by the Trust. It is the Feedlot's argument that each new and independent cause should have been submitted separately.

The question submitted asked the jury: Do you find that actions of Bill Weatherly in authorizing the signing of the Excel contract by Sammy Slover, on behalf of Weatherly Trust, and thereby pricing the cattle in question, was a new and independent basis for the actual loss, if any, suffered by Weatherly Trust, and became the sole and efficient cause of Weatherly Trust's actual damages, if any?

The jury answered "no."

It is axiomatic that a trial court has broad discretion in the submission of issues. The trial court may submit separate questions with respect to each element of a case or to submit issues broadly, Tex. R.Civ.P. 277;[8] *Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 862 (Tex.App.—Amarillo 1983, no writ); *Members Mutual Insurance Co. v. Muckelroy*, 523 S.W.2d 77, 81–83 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.), even to the extent of a global submission. *Line Enterprises v.*

*Hooks & Matteson*, 659 S.W.2d 113, 117 (Tex.App.—Amarillo 1983, no writ); Pope and Lowerre, *The State of the Special Verdict–1979*, 11 St. Mary's L.J. 1, 9 (1979). According to our supreme court, a trial court must submit broad-form questions in the absence of extraordinary circumstances. *Texas Dept. of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990).

When a trial court exercises its discretion in submitting special issues to the jury, we will only reverse when a clear abuse of that discretion is shown. *DeAnda v. Home Ins. Co.*, 618 S.W.2d 529, 534 (Tex.1980); *Chrysler Corp. v. McMorries*, 657 S.W.2d at 862. The trial court does not abuse its discretion when the submission of a broad issue embodies the controlling issues and includes a narrower issue requested to be submitted. *Line Enterprises v. Hooks & Matteson*, 659 S.W.2d at 117.

In reviewing the trial court's exercise of its discretion, this court recognizes that, under Rule 277, the trial court's discretion is subject only to the requirement that the issues submitted must fairly submit the disputed issues for the jury's determination. *Chrysler Corp. v. McMorries*, 657 S.W.2d at 862; *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486, 488–89 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Cactus Drilling Company v. Williams*, 525 S.W.2d 902, 906–07 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). That is, the form of the submission must be sufficient to enable the jury to make an award of damages on proper grounds and correct principles of law. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973); *Chrysler Corp. v. McMorries*, 657 S.W.2d at 862. A submission is fatally defective if it fails to guide the jury to a finding on any proper legal measure of damages. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d at 90; *Chrysler Corp. v. McMorries*, 657 S.W.2d at 862. It is error to burden the jury with excessive numbers of instructions which emphasize extraneous factors to consider in reaching a verdict.

---

**8.** Rule 277 mandates broad form submissions "whenever feasible," that is, in any or every instance in which it is capable of being accomplished. *Texas Dept. of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990).

*Butler v. De La Cruz,* 812 S.W.2d 422, 426 (Tex.App.—San Antonio 1991, writ denied).

■ We find that the trial court exercised sound discretion in submitting the issue of new and independent causes in a single question, rather than several questions. Accordingly, we overrule the Feedlot's eighth point.

■ In the Feedlot's ninth point, it alleges that Question 2 in the court's charge erroneously failed to state the proper measure of damages in the case. However, upon reading the Feedlot's argument under the point, we find the thrust of the point is an allegation that there was no evidence to support the damage award. That is, the Feedlot maintains that the Trust did not plead and prove the appropriate measure of damages. It is our practice to construe liberally points of error in order to obtain a just, fair, and equitable adjudication of the rights of the litigants. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989). Thus, we will address the point according to its argument.

■ The instruction accompanying the damage question limited the jury's consideration to:

The difference, if any, in the value of goods and services as delivered, and the value of those goods and services if they had been as represented.

This language satisfies the "benefit of the bargain" damage calculation set forth by the supreme court. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988).

■ In reviewing a no evidence point, we must examine the record in a light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which supports the finding, and we must disregard all evidence or reasonable inferences therefrom to the contrary. *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex.1985); *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *Garza*

*v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Raw Hide Oil & Gas v. Maxus Exploration,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied).

■ In reviewing an insufficient evidence point, we must examine the entire record to determine if there is some probative evidence to support the finding, and, if there is, we must determine whether the evidence supporting the finding is so weak or the answer so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Garza v. Alviar,* 395 S.W.2d at 823; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Raw Hide Oil & Gas v. Maxus Exploration,* 766 S.W.2d at 276.[9]

■ We find that the information given by Slover to Weatherly regarding the type of cattle, weight, costs of care, expected date of sale, and other information about the purchase could have reasonably lead a jury to conclude that these were representations by the Feedlot concerning the cattle to be delivered. In addition, the jury heard Weatherly's testimony concerning the difficulty that the cattle had in meeting the Excel contract.

In order to sustain a finding of damages in light of a no evidence or insufficiency of the evidence point, there must be evidence of both the actual amount paid for the items and the actual market value of the items as received. *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796, 801 (Tex. App.—Dallas 1987, no writ). The jury heard testimony regarding price paid for the cattle, the cost of feeding and care, as well as the selling price of the cattle. Viewing the evidence as we must, we find this evidence both factually and legally sufficient to support the jury's finding. The Feedlot's ninth point is overruled.

In its tenth point of error, appellant contends that the trial court erred in failing to give the requested special instruction that implied warranties of merchantability and fitness do not apply to the sale of livestock.

**9.** The standards set forth for reviewing a no evidence and factual sufficiency challenge apply in points twelve, thirteen, and fourteen, *infra.*

As we discussed earlier, a trial court has broad discretion in the submission of questions and instructions to the jury. *Chrysler Corp. v. McMorries,* 657 S.W.2d at 862. The Trust brought suit against the Feedlot pursuant to § 17.46(b)(5) and (7) of the DTPA. Section 17.50(a) states that a consumer may maintain an action where the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in subsection (b) of § 17.46 constitutes a producing cause of actual damages. Section 17.-50(a)(1). Section 17.50(a)(2) provides a cause of action for a breach of an express or implied warranty.

No implied warranty was pled in this case. Weatherly specifically stated that he was not suing for breach of warranty. Rather, the Trust alleged only that the Feedlot violated the DTPA through the representations of Slover. The DTPA provides an independent remedy available in addition to any other existing remedies. Tex.Bus. & Com.Code Ann. § 17.43 (Vernon 1987); *Teague v. Bandy,* 793 S.W.2d 50, 56 (Tex.App.—Austin 1990, writ denied). A consumer who proves all the elements necessary to recover damages under the DTPA may recover those damages, notwithstanding the availability of any other remedy. *Woods v. Littleton,* 554 S.W.2d 662, 669 (Tex.1977); *Teague v. Bandy,* 793 S.W.2d at 56. Such an action is not governed by the traditional contractual rules. *Kennemore v. Bennett,* 755 S.W.2d 89, 91 (Tex.1988); *Teague v. Bandy,* 793 S.W.2d at 56. Thus, their DTPA action is not foreclosed by the non-existence of an implied warranty. *See Teague v. Bandy,* 793 S.W.2d at 56. We therefore overrule the Feedlot's tenth point of error.

In its eleventh point, the Feedlot contends that the trial court erred in declining to give a question to the jury regarding respondeat superior. The Feedlot maintains that the Trust failed to establish that Slover's actions occurred within the scope of his employment and in the furtherance of the business of the Feedlot. Therefore, the Feedlot claims, it is not liable for any unauthorized acts committed by Slover.

In addition to the fact that Rippy confirmed Slover's authority, there are two reasons why respondeat superior was not a proper issue for the jury. First, the principal cannot escape liability for the acts of his agent by simply saying the agent lacked authority to do the particular act. *Arterbury v. American Bank & Trust Co.,* 553 S.W.2d 943, 949 (Tex.Civ.App.—Texarkana 1977, no writ). It is a general rule that an agent's authority is presumed to be coextensive with the business entrusted to his care. *Longoria v. Atlantic Gulf Enterprises, Inc.,* 572 S.W.2d 71, 77 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The agent is limited in his authority to such contracts and acts as are incident to the management of the particular business with which he is entrusted. *Id.* Where an agent is acting for the principal, the principal is liable for the agent's fraud and misrepresentations *within the scope of the agency,* even though the principal had no knowledge of the fraud or misrepresentation and even if the principal received no benefit from the fraud or misrepresentations. *Campbell v. Hamilton,* 632 S.W.2d 633, 635 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (emphasis added); *Wink v. Wink,* 169 S.W.2d 721 (Tex.Civ.App.—Galveston 1943, no writ). If an agent is acting within the scope of his general authority, his wrongful act, though unauthorized, will nevertheless subject his principal to liability. *International & G.N.R. Co. v. Anderson,* 82 Tex. 516, 17 S.W. 1039 (1891); *Arterbury v. American Bank & Trust Co.,* 553 S.W.2d at 949; *Houston Printing Co. v. Jones,* 282 S.W. 854, 859 (Tex.Civ.App.—Galveston 1925, writ dism'd).

The second reason respondeat superior need not have been included in the charge is because the DTPA is not a codification of the common law. *Watkins v. Hammerman & Gainer,* 814 S.W.2d 867, 870 (Tex. App.—Austin 1991, no writ). The numerous defenses available in common law causes of action have no place in DTPA claims. *Id.; Shenandoah Assoc. v. J & K Properties,* 741 S.W.2d at 496. Thus, the trial court did not err in failing to submit a

special issue on respondeat superior. Accordingly, we overrule point eleven.

In point twelve, the Feedlot contends that the trial court erred in granting the judgment based upon the jury's answer to Question 1. The Feedlot argues that there is no evidence[10] to support the jury's answer. That question inquired of the jury:

> Did Hedley Feedlot, Inc., acting through Sammy Slover, engage in any false, misleading, or deceptive act or practice that was a producing cause of damages to Weatherly Trust?

The jury answered the question affirmatively.

The Feedlot's no evidence challenge is twofold. First, it contends that there was no written contract or written evidence showing a false, misleading, or deceptive act; and, second, it contends that the representations by Slover were merely opinion or puffing.

According to the evidence, Slover admitted that the Feedlot had expertise in the feeding and marketing of plain cattle. The Feedlot advertised its specialty regarding plain cattle in trade journals. Slover told Weatherly that he could sell the cattle to Excel for a dollar under the June futures price. However, due to the quality of the cattle upon arrival at the Feedlot, the cattle could not be contracted on the June futures price, and had to be contracted on the August futures.

The Feedlot supplied information about the cattle and selling price for the calculation of a projected break-even analysis. From the information, Weatherly projected a selling price of $69.00 per hundred weight. To attain this price, the cattle would have to have a certain quality of meat. The Trust asked to purchase heifers. The cattle as delivered were not of sufficient quality to net the projected profits, as evidenced by the Excel buyer's notification that the cattle would not be ready by June. Consequently, the Trust received only $60.91 per hundred weight after dis-

counts. This testimony provides some evidence that the cattle would be marketable in June, and some evidence that the cattle would be of sufficient quality to satisfy the Excel purchase contract.

In addition, Rippy testified that he did not contract with Excel in his own personal business and did not recommend it. Yet Rippy admitted that the Feedlot offers this service and permits Slover to promote this kind of business.

The Feedlot's contention that there must be a written contract or written evidence showing a false, misleading, or deceptive act is not persuasive. Oral misrepresentations can serve as the basis of a DTPA action. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985).

The Feedlot also argues that the representations were merely puffing or opinion and therefore not actionable. We disagree.

It is well established that the legislature designed the DTPA to provide consumers with a method to combat deceptive trade practices. *Pennington v. Singleton*, 606 S.W.2d 682, 686 (Tex.1980); *Woods v. Littleton*, 554 S.W.2d at 665. Section 17.44 of the DTPA provides that the DTPA "shall be construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex.Bus. & Com.Code Ann. § 17.44 (Vernon 1987).

Although the DTPA does not specifically mention opinion or puffing, the Texas Supreme Court suggested in *Pennington v. Singleton* that such a defense existed. In that case, the supreme court held that the "general objective of §§ 17.46(b)(5) and 17.-46(b)(7) is to ensure that descriptions of goods or services offered for sale are accurate. Misrepresentations, so long as they are of a material fact and not merely 'puff-

---

**10.** Although appellant only delineates in its point of error a no evidence point, in the argument of this point, a factual sufficiency point is also argued. Thus, we will also analyze the challenge to Question 1 on factual insufficiency grounds as well. *Sterner v. Marathon Oil Co.*, 767 S.W.2d at 690.

ing'[11] or opinion, are nevertheless actionable...." *Pennington v. Singleton*, 606 S.W.2d at 687.

In *Pennington*, the seller of a used motor boat and trailer told the buyer that the trailer and boat recently had $500 worth of repairs, making the boat in "excellent condition," "perfect condition," and "just like new." *Pennington v. Singleton*, 606 S.W.2d at 685. These statements were false because the gear housing of the motor had been cracked and inadequately repaired. The supreme court held that these statements were misrepresentations and not merely statements of opinion or puffing. *Pennington v. Singleton*, 606 S.W.2d at 689; *see also RRTM Restaurant Corp. v. Keeping*, 766 S.W.2d 804, 807 (Tex. App.—Dallas 1988, writ denied) (a misrepresentation is actionable so long as it is not mere "puffing").

Courts consider three variables in their determination of whether a statement is puffing and therefore not actionable. First, the specificity of the statement must be analyzed. *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462 (Tex.App.—Dallas 1990), *writ denied per curiam*, 800 S.W.2d 853 (Tex.1991). An imprecise or vague representation constitutes a mere opinion. *Id.* General statements must be examined in light of the particular fact situation. *Id.* at 464. Second, courts will compare the knowledge of the buyer and seller. *Id.* at 463. A final consideration is whether the representation pertains to a past or current event or condition, or to a future event or condition. *Id.* at 464. Representations of future conditions or performances of a good or service are actionable under the DTPA. *Smith v. Baldwin*, 611 S.W.2d 611, 615–16 (Tex.1980); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d at 464.

Viewing the evidence as we must, some probative evidence exists to support the finding. The statements by Slover to Weatherly were sufficiently specific in the context of the cattle feeding business. According to the evidence, Slover represented that the Feedlot specialized in the feeding of plain cattle. He also represented to the Trust that the cattle would satisfy the contract with Excel. On these facts, the seller had more knowledge and expertise in the feeding of this type of cattle than the buyer. It was because of this expertise that Weatherly approached the Feedlot. Clearly, the representations of Slover involved the future performance of cattle.

We find this evidence, viewed as we must,[12] sufficient evidence to support the jury's answer to Question 1 under a no evidence or a factual insufficient challenge. Accordingly, we overrule appellant's point of error twelve.

Under its thirteenth point, the Feedlot contends that there is no evidence to support the jury's finding to Question 2 which asked the jury:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Weatherly Trust for its actual damages, if any, that resulted from the false, misleading, or deceptive act or practice found by you in answer to Question No. 1?

Consider the following elements of damages, if any, and none other: The difference, if any, in the value of goods and services as delivered, and the value of those goods and services if they had been as represented.

The jury awarded $3,006.09.

Establishing the amount of damages is a duty of the jury in a jury trial. *Sumrall v. Navistar Financial Corp.*, 818 S.W.2d 548, 559 (Tex.App.—Beaumont 1991, no writ). It is not the prerogative of the intermediate appellate courts to substitute its judgment for that of a jury where there is evidence to support a jury finding. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988).

Section 17.50(b) of the DTPA provides that a consumer who prevails may obtain damages as found by the trier of

---

11. Puffery has been defined as an expression of opinion by a seller not made as a representation of fact. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 729 (Tex.1982).

12. See discussion *supra* p. 836.

fact. Tex.Bus. & Com.Code Ann. § 17.-50(b)(1) (Vernon Supp.1993). The DTPA allows recovery for the greatest amount of "actual damages" alleged and factually established that were caused by the deceptive practice. *Kish v. Van Note,* 692 S.W.2d 463, 466 (Tex.1985); *Odom v. Meraz,* 810 S.W.2d 241, 244 (Tex.App.—El Paso 1991, no writ); *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290, 298 (Tex. Civ.App.—Waco 1978, writ ref'd n.r.e.); Tex.Bus. & Com.Code § 17.50(b)(1) (Vernon Supp.1993). According to the supreme court, actual damages are those recoverable at common law. *Farrell v. Hunt,* 714 S.W.2d 298, 300 (Tex.1986); *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

Under common law, there are two measures of damages for misrepresentation: (1) the "out of pocket" measure, which is the difference between the value of that which was parted with and the value of that which was received, and (2) the "benefit of the bargain" measure, which is the difference between the value as represented and the value actually received. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d at 128. The DTPA permits a plaintiff to recover either the "out of pocket" or the "benefit of the bargain" damages, whichever is greater. *Id.; Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984) (citations omitted). It is the Trust's burden to establish one of the two measures of damages. *See W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d at 128.

Viewing the evidence as we must,[13] we find there is sufficient evidence to support the jury's answer to Question 2. The Trust sustained a loss of $17,439.16 on the cattle venture. Weatherly, as representative of the Trust, looked at the cattle at the Feedlot that would be like the ones he was considering purchasing. Slover told Weatherly the price of those cattle, and the selling price those cattle would make. According to Weatherly, Slover told him that we could get these kind of heifers in for a certain price, that we should be able—and we discussed how they should feed and we agreed they should feed around fifty-five, sixty cents on the cost of gain basis and he told me he could sell them to Excel, we could contract them at one dollar under the June futures price.

Slover supplied the approximate purchase weights which were to be 675 pounds, that they were to be heifers, and the approximate selling weight, which was one thousand pounds. Slover also provided information about the cost of the rations and the estimated death loss and the purchase price.

Slover represented to Weatherly that the cattle would be sold to Excel for one dollar under the June futures price. However, the buyer for Excel, upon seeing the cattle shortly after they were on feed at the Feedlot, told Slover that the cattle would not be ready until August. Pushing back the date the cattle were to mature lowered the selling price.

Weatherly and Slover examined the figures on the cattle the Trust was considering purchasing, and made calculations as to profitability. Taking the information and figures provided by Slover, Weatherly calculated a break-even price for the venture. The calculations were before the jury in the form of exhibits, as well as in the testimony of Weatherly, who explained the calculations and figures.

We find this evidence, taken in the light most favorable to the finding, as probative and sufficient to support the jury's finding of $3,006.09. Accordingly, we overrule point thirteen.

In point fourteen, appellant argues there is no evidence, or in the alternative, insufficient evidence to support the jury's affirmative answer to Question 3 which asked the jury:

Did Sammy Slover knowingly engage in the conduct found by you in answer to Question No. 1.

**13.** See discussion *supra* p. 836.

"Knowingly" means actual awareness of the falsity, deception, or unfairness of the representation in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider only the conduct that you have found was a producing cause of damages to Weatherly Trust.

It is noteworthy that the jury did not award to the Trust any damages in addition to actual damages due to the knowing conduct of Slover. That being the case, the point raised by the Feedlot is moot. The DTPA provides:

[i]n a suit filed under this section, each consumer who prevails may obtain: (1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000....

Tex.Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon Supp.1993).

Despite the jury finding that Slover acted knowingly in his representations to Weatherly, the jury failed to award additional damages as allowed by § 17.50.[14] The trial court awarded $3,006.09 in actual damages as found by the jury. In addition, pursuant to the statute, the court awarded $2,000.00, which represents two times actual damages that did not exceed $1,000.00. No damages were awarded for the Feedlot's knowing conduct, thus the Feedlot's

point of error is moot. Accordingly, we overrule point fourteen.

In point fifteen, the Feedlot contends the trial court erred in failing to disregard the jury's answer to Question 5 because the jury's finding is against the great weight and preponderance of the evidence.[15]

The question of whether a plaintiff is a consumer under the DTPA is a question of law to be determined by the trial court from the evidence. *Reed v. Israel Nat. Oil Co., Ltd.,* 681 S.W.2d 228, 233 (Tex.App.— Houston [1st Dist.] 1984, no writ). If the trial court concludes that a plaintiff is not a consumer, then it will not submit jury questions as to the violation of the terms of the DTPA. *Reed v. Israel Nat. Oil Co., Ltd.,* 681 S.W.2d at 233; *Ridco, Inc. v. Sexton,* 623 S.W.2d 792, 795 (Tex.App.—Fort Worth 1981, no writ). Thus, where the trial court submitted jury questions regarding violations of the DTPA, as it did in this case in Questions 1 and 3, it is presumed that the trial court concluded that the plaintiff was a consumer for purposes of the DTPA. *Reed v. Israel Nat. Oil Co., Ltd.,* 681 S.W.2d at 233. In Question 5, the jury found the Trust was a consumer. The question instructed the jury that a "consumer" is an individual, partnership, or corporation, who seeks or acquires by purchase or lease, any goods or services. The question further instructed the jury that "person" is an individual, partnership, corporation, association, or other group, however organized. The Feedlot contends that the inclusion of the definition of person in the question was erroneous.

---

**14.** Question four of the charge asked the jury:
What sum of money, if any, in addition to actual damages, should be awarded to Weatherly Trust against Hedley Feedlot, Inc. because Sammy Slover's conduct was committed knowingly?

**15.** The Feedlot mischaracterizes its challenge to the evidence. It contends that the finding is "against the great weight and preponderance of the evidence." Such a challenge is made to the factual sufficiency of the evidence by the party with the burden of proof on the issue. *Raw Hide Oil & Gas v. Maxus Exploration,* 766 S.W.2d at 276. The issue of consumer status of

the plaintiff must be established by the plaintiff, who in this case was the Trust. *See Kennedy v. Sale,* 689 S.W.2d 890, 892 (Tex.1985); *Taylor v. GWR Operating Co.,* 820 S.W.2d 908, 910 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *Baldwin v. Calcasieu Lumber Co.,* 588 S.W.2d 659, 660 (Tex.Civ.App.—Austin 1979, no writ). Thus, appellant is the party without the burden of proof on the consumer status issue. Appellant's challenge should have been properly characterized as an insufficiency point of error. *See Raw Hide Oil & Gas v. Maxus Exploration,* 766 S.W.2d at 275. We will address the Feedlot's challenge as an insufficient evidence point. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690.

The question of consumer status is a question of law for the court. Thus, the trial court erroneously submitted Question 5 to the jury. However, reversal is not required unless the error amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented appellant from making a proper presentation of the case to the appellate court. Tex.R.App.P. 81(b)(1). *See Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749 (Tex.1980); *Denman v. Burris,* 815 S.W.2d 793, 796 (Tex.App.— El Paso 1991, writ denied). The question of harm must be determined from an examination of the record as a whole. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d at 749; *Denman v. Burris,* 815 S.W.2d at 796. An exception exists where an erroneously submitted definition, though correct, confuses or misleads the jury. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d at 750; *Denman v. Burris,* 815 S.W.2d at 796.

Because consumer status is a question for the court, any finding by the jury regarding that status is immaterial. Additionally, we find nothing in the instruction calculated to mislead or confuse the jury. Therefore, the error does not require reversal, and we overrule the Feedlot's fifteenth point.

In points sixteen and seventeen, the Feedlot challenges the trial court's failure to disregard the jury's answer to Question 6 of the charge in which the jury was asked:

Do you find that actions of Bill Weatherly in authorizing the signing of the Excel contract by Sammy Slover, on behalf of Weatherly Trust, and thereby pricing the cattle in question, was a new and independent basis for the actual loss, if any, suffered by Weatherly Trust, and became the sole and efficient cause of Weatherly Trust's actual damages, if any?

The jury answered Question 6 "no."

The Feedlot contends in these two points, respectively, that there was "no evidence," or in the alternative that the evidence supporting the finding is "contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust."

The defense of "new and independent cause" is an affirmative defense, *see* Tex.R.Civ.P. 94, and must be affirmatively plead. As the defendant, it was the Feedlot's burden to plead and prove the defense.

Although the Feedlot erroneously complained that there was "no evidence" to support the jury's non-finding, it is our practice to construe liberally points of error in order to obtain a just, fair, and equitable adjudication of the rights of the litigants. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690; *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). Since the Feedlot is attacking the adverse finding to an issue upon which it had the burden of proof, we must treat its point of error as if it were asserting that it had established a new and independent cause as a matter of law. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690; and *Holley v. Watts,* 629 S.W.2d at 696.

A party attempting to overcome an adverse fact finding as a matter of law must surmount two obstacles. First, the record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690; *Holley v. Watts,* 629 S.W.2d at 696; 6 Roy W. McDonald, Texas Civil Practice § 44.9 (1992).

The Feedlot's argument that there is an absence of evidence to show that Weatherly's authorization of Slover to sign the Excel contract was not a new and independent cause of the actual loss misses the mark. The jury's failure to find a fact does not need to be supported by affirmative evidence. *Payne v. Snyder,* 661 S.W.2d 134, 144 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.).

Moreover, there is clear evidence both factually and legally sufficient to sup-

port the finding. Accordingly, we overrule points sixteen and seventeen.

In its eighteenth and nineteenth points of error, the Feedlot challenges the jury award of attorney fees to counsel for the Trust. The Feedlot contends that there is no evidence, or in the alternative, that the finding is against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, to warrant a judgment against the Feedlot for false, misleading, or deceptive acts or practices.

█ We have affirmed the trial court's judgment pertaining to violations of the DTPA on the part of the Feedlot. When a consumer prevails under the DTPA, he shall be awarded court costs and reasonable attorney's fees. Tex.Bus. & Com. Code Ann. § 17.50(d) (Vernon 1987). Clearly, the Trust prevailed in its DTPA claims against the Feedlot. Additionally, counsel for the Trust testified that he had worked approximately 191 hours on the case. He also testified to his hourly rate and experience. Testimony on the reasonableness and necessity of counsel's work was also received. Accordingly, we overrule points eighteen and nineteen.

In summary, all of the Feedlot's points of error are overruled, and the judgment of the trial court is affirmed.